# EXHIBIT 1

Electronically FILED by Superior Court of California, County of Los Angeles on 11/20/2019 03:43 PM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Perez,Deputy Clerk

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| ZBS Law, LLP<br>Jonathan J. Damen SBN 251869; Talia Cortese SBN 318124<br>30 Corporate Park, Suite 450<br>Irvine, CA 92606<br>TELEPHONE NO.: (714) 848-7920   FAX NO.: (714) 908-7836<br>ATTORNEY FOR *(Name):* | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **LOS ANGELES**
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles, CA 90043
BRANCH NAME: Stanley Mosk Courthouse

CASE NAME:
In Re: 5468 10th Avenue, Los Angeles, CA 90043

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| ☑ Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | ☐ Limited<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ Counter   ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | 19STCP04975<br>JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation<br>(Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| ☐ Auto (22) | ☐ Breach of contract/warranty (06) | ☐ Antitrust/Trade regulation (03) |
| ☐ Uninsured motorist (46) | ☐ Rule 3.740 collections (09) | ☐ Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property** | ☐ Other collections (09) | ☐ Mass tort (40) |
| **Damage/Wrongful Death) Tort** | ☐ Insurance coverage (18) | ☐ Securities litigation (28) |
| ☐ Asbestos (04) | ☐ Other contract (37) | ☐ Environmental/Toxic tort (30) |
| ☐ Product liability (24) | **Real Property** | ☐ Insurance coverage claims arising from the |
| ☐ Medical malpractice (45) | ☐ Eminent domain/Inverse | above listed provisionally complex case |
| ☐ Other PI/PD/WD (23) | condemnation (14) | types (41) |
| **Non-PI/PD/WD (Other) Tort** | ☐ Wrongful eviction (33) | **Enforcement of Judgment** |
| ☐ Business tort/unfair business practice (07) | ☐ Other real property (26) | ☐ Enforcement of judgment (20) |
| ☐ Civil rights (08) | **Unlawful Detainer** | **Miscellaneous Civil Complaint** |
| ☐ Defamation (13) | ☐ Commercial (31) | ☐ RICO (27) |
| ☐ Fraud (16) | ☐ Residential (32) | ☐ Other complaint *(not specified above)* (42) |
| ☐ Intellectual property (19) | ☐ Drugs (38) | **Miscellaneous Civil Petition** |
| ☐ Professional negligence (25) | **Judicial Review** | ☐ Partnership and corporate governance (21) |
| ☐ Other non-PI/PD/WD tort (35) | ☐ Asset forfeiture (05) | ☑ Other petition *(not specified above)* (43) |
| **Employment** | ☐ Petition re: arbitration award (11) | |
| ☐ Wrongful termination (36) | ☐ Writ of mandate (02) | |
| ☐ Other employment (15) | ☐ Other judicial review (39) | |

2. This case ☐ is   ☑ is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties   d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel   e. ☐ Coordination with related actions pending in one or more courts
   issues that will be time-consuming to resolve   in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☐ monetary   b. ☑ nonmonetary; declaratory or injunctive relief   c. ☐ punitive
4. Number of causes of action *(specify):*
5. This case ☐ is   ☑ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related cases. *(You may use form CM-015.)*

Date: 11/19/2019

Jonathan J. Damen
_____
(TYPE OR PRINT NAME)                                    ▶ _____
                                                         (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |
|---|---|---|

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice– Physicians & Surgeons
    Other Professional Health Care Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip and fall)
    Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
    Intentional Infliction of Emotional Distress
    Negligent Infliction of Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
    Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/ Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court Case Matter
    Writ–Other Limited Court Case Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of County)
    Confession of Judgment *(non-domestic relations)*
    Sister State Judgment
    Administrative Agency Award *(not unpaid taxes)*
    Petition/Certification of Entry of Judgment on Unpaid Taxes
    Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-harassment)*
    Mechanics Lien
    Other Commercial Complaint Case *(non-tort/non-complex)*
    Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late Claim
    Other Civil Petition

**CIVIL CASE COVER SHEET**

Electronically FILED by Superior Court of California, County of Los Angeles on 11/20/2019 09:09 AM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Perez,Deputy Clerk

**MC-095**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):*<br>ZBS LAW, LLP<br>Jonathan J. Damen SBN 251869<br>Talia M. Cortese SBN 318124<br>30 Corporate Park, Suite 450<br>Irvine, CA 92606<br>TELEPHONE NO.: (714) 848-7920   FAX NO. *(Optional):* (714) 908-7855<br>E-MAIL ADDRESS *(Optional):* jdamen@zbslaw.com<br>ATTORNEY FOR *(Name):* Petitioner Western Progressive, LLC | *FOR COURT USE ONLY* |

| |
|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF<br>STREET ADDRESS: 111 North Hill Street<br>MAILING ADDRESS: 111 North Hill Street<br>CITY AND ZIP CODE: Los Angeles, CA 90043<br>BRANCH NAME: Stanley Mosk Courthouse |

| |
|---|
| IN RE *(ADDRESS OF REAL PROPERTY):*<br>In Re: 5468 10th Avenue, Los Angeles, CA 90043 |

| | |
|---|---|
| **PETITION AND DECLARATION REGARDING UNRESOLVED CLAIMS AND DEPOSIT OF UNDISTRIBUTED SURPLUS PROCEEDS OF TRUSTEE'S SALE** | |

| | |
|---|---|
| Jurisdiction *(check all that apply):*<br>☐ **ACTION IS A LIMITED CIVIL CASE**<br>  Amount deposited  ☐  **does not exceed $10,000**<br>              ☐  **exceeds $10,000, but does not exceed $25,000**<br>☑ **ACTION IS AN UNLIMITED CIVIL CASE (exceeds $25,000)** | CASE NUMBER:<br><br>19STCP04975 |

1. Petitioner *(name):* Western Progressive, LLC     is the trustee under the Deed of Trust described in items 2 and 3 below.

**The Deed of Trust**

2. The Deed of Trust encumbered the real property commonly known as *(describe):*

   5468 10th Avenue, Los Angeles, CA 90043

   (the "property") and legally described  ☑  in Attachment 2     ☐  as follows:
   See Attachment 2

3. The Deed of Trust was

   a. Executed by *(name):* Doris Tinson                                    as trustor.

   b. Executed on *(date):* 12/26/2006

   c. Recorded:

      (1) Date: 01/08/2007

      (2) County: Los Angeles

      (3) Instrument number: 20070034170

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>MC-095 [Rev. January 1, 2004] | **PETITION AND DECLARATION REGARDING<br>UNRESOLVED CLAIMS AND DEPOSIT OF UNDISTRIBUTED<br>SURPLUS PROCEEDS OF TRUSTEE'S SALE** | Civil Code, § 2924j |

| IN RE: In Re: 5468 10th Avenue, Los Angeles, CA 90043 | CASE NUMBER: |
|---|---|

**The Trustee's Sale, Surplus Proceeds, and Notice to Potential Claimants**

4.  The property was the subject of a trustee's sale that was held on *(date):* 04/02/2019

5.  A trustee's sale guarantee was prepared for the trustee's sale. *(A copy of the trustee's sale guarantee must be attached as Attachment 5.)*

6.  The total sale price of the property was: $ 465,000.00

7.  After payment of the amounts required by Civil Code section 2924k(a)(1)–(2), there were surplus proceeds from the trustee's sale available to potential claimants in the total amount of: $ 152,358.85

8.  Within 30 days after the trustee's sale, the trustee sent written notice under Civil Code section 2924j(a) to all persons with a recorded interest in the real property as of the date immediately prior to the trustee's sale who would be entitled to notice. The names and addresses of all persons sent notice under Civil Code section 2924j(a) are as follows:

    Please see Attachment 8 hereto.

    ☑ Continued on Attachment 8.

**The Claims**

9.  The trustee has received a total of *(specify number):*   3    written claims from potential claimants.

10. The trustee has exercised due diligence to determine the priority of the written claims received by the trustee to the trustee's sale surplus proceeds from the persons identified in item 8 to whom notice was sent.

11. The trustee submits this declaration under Civil Code section 2924j(c) for the following reason:

    a.  ☐   After due diligence, the trustee is unable to determine the priority of the written claims received by the trustee to the trustee's sale surplus proceeds. *(If this reason applies, describe the problem of determining priorities in Attachment 11a.)*

    b.  ☑   The trustee has determined that there is a conflict between potential claimants to the surplus proceeds. *(If this reason applies, identify the claimants and describe the conflict in Attachment 11b.)*

12. The trustee provides the following additional information relevant to the identity, location, priority of potential claimants, and the conflict of claims:

    See Attachment 12.

    ☑ Continued on Attachment 12.

**Notice of Intent to Deposit Funds and Proof of Service**

13. The trustee has provided written notice to all persons with a recorded interest in the property who would be entitled to notice under Civil Code section 2924b(b)–(c). The notice includes the following information:

    a.  The trustee intends to deposit funds from the trustee's sale with the clerk of the court.

    b.  A claim for funds must be filed with the court within 30 days from the date of notice.

    c.  The address of the court in which the funds are to be deposited and a telephone number for obtaining further information.

    *(Proof of Service of the notice on **all** persons entitled to notice under Civil Code section 2924j(d) must be attached to this declaration as Attachment 13.)*

| MC-095 [Rev. January 1, 2004] | **PETITION AND DECLARATION REGARDING UNRESOLVED CLAIMS AND DEPOSIT OF UNDISTRIBUTED SURPLUS PROCEEDS OF TRUSTEE'S SALE** | Page 2 of 3 |

| IN RE: In Re: 5468 10th Avenue, Los Angeles, CA 90043 | CASE NUMBER: |
|---|---|

**Deposit**

**14. Distributions**
The trustee has distributed the total amount of: $ 0.00      to the following claimants based on their written claims:
Name of claimant:      Amount:

☐ Continued on Attachment 14.

**15. Trustee's Fees and Expenses**
The trustee has incurred reasonable fees and expenses totaling: $ 4,972.30   . These fees and expenses are recoverable under Civil Code section 2924k(a)(1) and (b) and are described ☑ in Attachment 15 ☐ as follows (specify):

**16. Deposit**
The amount to be deposited is calculated as follows:
| | |
|---|---|
| a. Trustee's sale proceeds ............................................. | $ 465,000.00 |
| b. Debt to foreclosing creditor ......................................... | $ 307,668.85 |
| c. Available surplus proceeds (a minus b) ............................... | $ 157,331.15 |
| d. Claims paid by trustee (from item 14) ............................... | $ 0.00 |
| e. Trustee's fees and expenses (from item 15) ......................... | $ 4,537.30 |
| f. Remaining surplus proceeds (c minus (d plus e)) ..................... | $ 152,793.85 |
| g. Filing fee .......................................................... | $ 435.00 |
| h. Deposit (f minus g) ................................................. | $ 152,358.85 |

(If the trustee is represented by an attorney, the attorney's signature follows):

Date: November 19 2019

Jonathan J. Damen
(TYPE OR PRINT NAME OF ATTORNEY)      ▶ _____ (SIGNATURE OF ATTORNEY)

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: November 19 ,2019

Western Progressive, LLC
(TYPE OR PRINT NAME OF TRUSTEE)      ▶ _____ (SIGNATURE OF TRUSTEE)

# ATTACHMENT 2: LEGAL DESCRIPTION

**Lot 471 of Tract 668, in the city of Los Angeles, County of Los Angeles, State of California, as per map recorded in book 15 pages 194 and 195 of maps, in the office of the county recorder of said county.**

# **ATTACHMENT 5**: TSG

 **WESTCOR** LAND TITLE INSURANCE COMPANY

GUARANTEE NO.
TSG-7-CA1010-2557847

## TRUSTEE'S SALE GUARANTEE

SUBJECT TO THE EXCLUSIONS FROM COVERAGE AND THE CONDITIONS ATTACHED HERETO AND MADE A PART OF THIS GUARANTEE,

## WESTCOR LAND TITLE INSURANCE COMPANY,

a corporation, herein called the Company

### GUARANTEES

The Assured named in Schedule A of this Guarantee

against loss or damage not exceeding the liability amount stated in Schedule A sustained by the Assured by reason of any incorrectness in the assurances set forth in Paragraph 3 of Schedule A.

### SCHEDULE A
### IS ATTACHED HERETO AS A SEPARATE PAGE AND MADE A PART OF THIS GUARANTEE

*In Witness Whereof,* WESTCOR LAND TITLE INSURANCE COMPANY, has caused this Guarantee to be signed and sealed as of Date of Guarantee shown in Schedule A.

Issued By:

CA1010 * TSG1202-CA-311649
Premium Title of California, Inc.
100 Pacifica, Suite 205
Irvine, CA  92618

WESTCOR LAND TITLE INSURANCE COMPANY

By: _Mary O'Donnell_
President

Attest: _Patricia N Bower_
Secretary

**NOTE: This Guarantee is of no force and effect unless Schedule A is signed and attached together with any added pages incorporated by reference.**

## WESTCOR LAND TITLE INSURANCE COMPANY
## EXCLUSIONS FROM COVERAGE

1. Except to the extent of the assurances set forth in Paragraph 3 of Schedule A, the Company assumes no liability for loss or damage by reason of any law, ordinance, governmental regulation or any other police power adopted or promulgated by any federal or state government authority purporting to regulate non-judicial foreclosures or any related duties, whether or not disclosed by the Public Records at the Date of Guarantee.

2. Notwithstanding any assurances set forth in Paragraph 3 of Schedule A, the Company assumes no liability for loss or damage by reason of the following:

    a. Defects, liens, encumbrances, adverse claims or other matters affecting the title to any property beyond the lines of the Land expressly described in the description set forth in Schedule A of this Guarantee, or title to streets, roads, avenues, lanes, ways or waterways to which such Land abuts, or the right to maintain therein vaults, tunnels, ramps or any structure or improvements; or any rights or easements therein, unless such property, rights or easements are expressly and specifically set forth in said description.

    b. Defects, liens, encumbrances, adverse claims or other matters, whether or not shown by the Public Records (1) that are created, suffered, assumed or agreed to by one or more of the Assureds; (2) that result in no loss to the Assured; or (3) that do not result either in the invalidity of any non-judicial proceeding to foreclose the lien of the Mortgage or the failure of any such non-judicial foreclosure proceeding to divest a lien, estate or interest subordinate or subject to the lien of the Mortgage.

    c. Defects, liens, encumbrances, adverse claims or other matters against the title, not shown by the Public Records.

    d. The identity of any party shown or referred to in Schedule A.

    e. The validity, legal effect or priority of any matter shown or referred to in this Guarantee.

    f. Any law, ordinance, governmental regulation or any other police power adopted or promulgated by any county, city, or any other local government authority purporting to regulate non-judicial foreclosures or any related duties, whether or not disclosed by the Public Records at the Date of Guarantee.

    g. (1) Taxes or assessments of any taxing authority that levies taxes or assessments on real property; or, (2) proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not the matters excluded under (1) or (2) are shown by the records of the taxing authority or by the Public Records.

    h. (1) Unpatented mining claims; (2) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (3) water rights, claims or title to water, whether or not the matters excluded under (1), (2) or (3) are shown by the Public Records.

### INFORMATIONAL NOTES

No assurances as set forth in Paragraph 3 of Schedule A are provided in connection with the following information and the Company assumes no liability for any inaccuracies in or omissions from the information. This information is not intended to be comprehensive and does not necessarily include all laws and regulations that might affect the contemplated foreclosure.

1. Attention is called to the Servicemembers Civil Relief Act (Appendix 50 USC §§501 et seq.), and any amendments thereto and the Military Reservist Relief Act of 1991 (California Military and Veterans Code §§ 800 et seq.) and any amendments thereto that contain restrictions against the sale of land under a deed of trust or mortgage if the owner is entitled to the benefits of those Acts.

2. Attention is called to the Federal Tax Lien Act of 1966 (26 USC §§ 6321 et seq.), and any amendments thereto that, among other things, provides for the giving of written notice of sale in a specified manner to the Secretary of Treasury or his or her delegate as a requirement for the discharge or divestment of a Federal Tax Lien in a non-judicial sale, and establishes with respect to that lien a right in the United States to redeem the property within a period of 120 days from the date of the sale.

3. Attention is called to California Government Code § 16187, and any amendments thereto, that, among other things, provides for the giving of written notice of sale in a specified manner to the Controller of the State of California necessary for the discharge or divestment in a non-judicial sale of a Notice of Lien for Postponed Property Taxes recorded in the public records subsequent to the recording of a notice of default.

4. Attention is called to California Civil Code § 2923.5, and any amendments thereto, that applies to loans made from January 1, 2003 to December 31, 2007 secured by deeds of trust on owner-occupied residential property and that, among other things, states that a notice of default may not be recorded pursuant to California Civil Code § 2924 until 30 days after initial contact with the borrower of a prescribed and detailed nature is made or after satisfying

certain due diligence requirements. A special declaration with respect to the initial contact must be attached to or made a part of a notice of default. Reference is made to the statute for particulars.

5. Attention is called to *California Civil Code § 2924.8*, and any amendments thereto, that applies to notes secured by deeds of trust on residential real property, if the billing address for the mortgage note is different than the property address, and that, among other things, requires the posting of a prescribed notice of impending foreclosure in several designated languages and the mailing of that notice in a prescribed manner, which posting and mailing are to

occur concurrently with posting and mailing of notice of sale pursuant to *California Civil Code § 2924f*. A copy of that notice may be obtained from the State of California Department of Financial Institutions. Reference is made to the statute for particulars.

6. Attention is called to *California Civil Code § 2924b (d)*, and any amendments thereto, that requires alternative notice procedures if the mortgage or deed of trust does not contain a mailing address of the trustor or mortgagor.

*[The inclusion, arrangement and language of the matters shown in the above Informational Notes to be in accordance with the practices of the issuing member company.]*

## TRUSTEE'S SALE GUARANTEE CONDITIONS

### 1. Definition of Terms.

The following terms when used in the Guarantee mean:

a. the "Assured": (i) the party or parties named as the Assured in Schedule A, or on a supplemental writing executed by the Company, (ii) the duly substituted trustee of the Mortgage and (iii) the owner of the indebtedness or other obligation secured by the Mortgage.

b. "Land": the Land described or referred to in Schedule A, and improvements affixed thereto which by law constitute real property. The term "Land" does not include any property beyond the lines of the area described or referred to in Schedule A, nor any right, title, interest, estate or easement in abutting streets, roads, avenues, alleys, lanes, ways or waterways.

c. "Mortgage": the mortgage, deed of trust, trust deed, or other security instrument set forth in Paragraph 3.d. of Schedule A.

d. "Public Records": those records established under California statutes at Date of Guarantee for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge.

e. "Date of Guarantee": the Date of Guarantee set forth in Schedule A

### 2. Notice of Claim to be Given by Assured.

The Assured shall notify the Company promptly in writing in case knowledge shall come to the Assured of any assertion of facts, or claims of title or interest that are contrary to the assurances set forth in Paragraph 3 of Schedule A and that might cause loss or damage for which the Company may be liable under this Guarantee. If prompt notice shall not be given to the Company, then all liability of the Company shall terminate with regard to the matter or matters for which prompt notice is required;

provided, however, that failure to notify the Company shall in no case prejudice the rights of the Assured under this Guarantee unless the Company shall be prejudiced by the failure and then only to the extent of the prejudice.

### 3. No Duty to Defend or Prosecute.

The Company shall have no duty to defend or prosecute any action or proceeding to which the Assured is a party, notwithstanding the nature of any allegation in such action or proceeding.

### 4. Company's Option to Defend or Prosecute Actions; Duty of Assured to Cooperate.

Even though the Company has no duty to defend or prosecute as set forth in Paragraph 3 above:

a. The Company shall have the right, at its sole option and cost, to institute and prosecute any action or proceeding, interpose a defense, as limited in Paragraph 4.b. or to do any other act which in its opinion may be necessary or desirable to establish the correctness of the assurances set forth in Paragraph 3 of Schedule A or to prevent or reduce loss or damage to the Assured including, but not limited to, repeating the trustee's sale proceeding. The Company may take any appropriate action under the terms of this Guarantee, whether or not it shall be liable hereunder, and shall not thereby concede liability or waive any provision of this Guarantee. If the Company shall exercise its rights under this paragraph, it shall do so diligently.

b. If the Company elects to exercise its options as stated in Paragraph 4.a. the Company shall have the right to select counsel of its choice (subject to the right of the Assured to object for reasonable cause) to represent the Assured and shall not be liable for and will not pay the fees of any other counsel, nor will the Company pay any fees, costs or expenses incurred by the Assured in the defense of those causes of action which allege matters not covered by this Guarantee.

c. Whenever the Company shall have brought an action or interposed a defense as permitted by the provisions of this Guarantee, the Company may pursue any litigation to final determination by a court of competent jurisdiction and expressly reserves the right, in its sole discretion, to appeal from an adverse judgment or order.

d. In all cases where this Guarantee permits the Company to prosecute or provide for the defense of any action or proceeding, the Assured shall secure to the Company the right to so prosecute or provide for the defense of any action or proceeding, and all appeals therein, and permit the Company to use, at its option, the name of the Assured for this purpose. Whenever requested by the Company, the Assured, at the Company's expense, shall give the Company all reasonable aid in any action or proceeding, securing evidence, obtaining witnesses, prosecuting or defending the action or lawful act which in the opinion of the Company may be necessary or desirable to establish the correctness of the assurances set forth in Paragraph 3 of Schedule A. If the Company is prejudiced by the failure of the Assured to furnish the required cooperation, the Company's obligations to the Assured under the Guarantee shall terminate.

## 5. Proof of Loss or Damage.

a. In addition to and after the notices required under Section 2 of these Conditions have been provided to the Company, a proof of loss or damage signed and sworn to by the Assured shall be furnished to the Company within ninety (90) days after the Assured shall ascertain the facts giving rise to the loss or damage. The proof of loss or damage shall describe the matters covered by this Guarantee which constitute the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage. If the Company is prejudiced by the failure of the Assured to provide the required proof of loss or damage, the Company's obligation to the Assured under the Guarantee shall terminate.

b. The Company may reasonably require the Assured to submit to examination under oath by any authorized representative of the Company and to produce for examination, inspection, and copying, at such reasonable times and places as may be designated by the authorized representative of the Company, all records, in whatever medium maintained, including books, ledgers, checks, memoranda, correspondence, reports, e-mails, disks, tapes, and videos whether bearing a date before or after Date of Guarantee, that reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the Assured shall grant its permission, in writing, for any authorized representative of the Company to examine,

inspect, and copy all of these records in the custody or control of a third party that reasonably pertain to the loss or damage. All information designated as confidential by the Assured provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the Assured to submit for examination under oath, produce any reasonably requested information, or grant permission to secure reasonably necessary information from third parties as required in this subsection, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this Guarantee as to that claim.

## 6. Options to Pay or Otherwise Settle Claims: Termination of Liability.

In case of a claim under this Guarantee, the Company shall have the following additional options:

a. To Pay or Tender Payment of the Amount of Guarantee or to Purchase the Indebtedness.

i. To pay or tender payment of the full amount of this Guarantee together with any costs, attorneys' fees, and expenses incurred by the Assured that were authorized by the Company up to the time of payment or tender of payment and that the Company is obligated to pay; or

ii. To purchase the indebtedness secured by the Mortgage for the amount owing thereon, together with any costs, attorneys' fees, and expenses incurred by the Assured that were authorized by the Company up to the time of purchase and that the Company is obligated to pay.

When the Company so purchases such indebtedness, the owner thereof shall transfer, assign, and convey to the Company the indebtedness and the Mortgage, together with any collateral security.

Upon the exercise by the Company of either of the options provided for in Paragraphs 6.a.i. or 6.a.ii., all liability and obligations of the Company to the Assured under this Guarantee, other than to make the payment required in those paragraphs, shall terminate, including any duty to continue any and all litigation initiated by Company pursuant to Paragraph 4.

b. To Pay or Otherwise Settle With Parties Other Than the Assured or With the Assured.

i. To pay or otherwise settle with other parties for or in the name of an Assured any claim assured against under this Guarantee. In addition, the Company will pay any costs, attorneys' fees, and expenses

incurred by the Assured that were authorized by the Company up to the time of payment and that the Company is obligated to pay; or

ii. To pay or otherwise settle with the Assured the loss or damage provided for under this Guarantee, together with any costs, attorneys' fees, and expenses incurred by the Assured that were authorized by the Company up to the time of payment and that the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in Paragraphs 6. b.i. or 6.b.ii., the Company's obligations to the Assured under this Guarantee for the claimed loss or damage, other than the payments required to be made, shall terminate, including any duty to continue any and all litigation initiated by Company pursuant to Paragraph 4.

### 7. Limitation of Liability.

This Guarantee is a contract of Indemnity against actual monetary loss or damage sustained or incurred by the Assured who has suffered loss or damage by reason of reliance upon the assurances set forth in Paragraph 3 of Schedule A and only to the extent herein described, and subject to the Exclusions From Coverage and Conditions of this Guarantee.

a. The liability of the Company under this Guarantee to the Assured shall not exceed the least of :

   i. the amount of liability stated in Schedule A;

   ii. the amount of the unpaid principal indebtedness secured by the Mortgage as limited or as reduced under Paragraph 8 of these Conditions at the time the loss or damage assured against by this Guarantee occurs, together with interest thereon; or

   iii. the difference between the value of the estate or interest set forth in Schedule A and the value of the estate or interest subject to any defect, lien, encumbrance or other matter assured against by this Guarantee.

b. If the Company or the Assured under the direction of the Company at the Company's expense establishes the title, or removes the alleged defect, lien or, encumbrance or cures any other matter assured against by this Guarantee in a reasonably diligent manner by any method, including litigation and the completion of any appeals therefrom, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby.

c. In the event of any litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final

determination by a court of competent jurisdiction, and disposition of all appeals therefrom.

d. The Company shall not be liable for loss or damage to the Assured for liability voluntarily assumed by the Assured in settling any claim or suit without the prior written consent of the Company.

### 8. Reduction of Liability or Termination of Liability.

All payments under this Guarantee, except payments made for costs, attorneys' fees and expenses pursuant to Paragraph 4 shall reduce the amount of liability pro tanto.

### 9. Payment of Loss.

a. No payment shall be made without producing this Guarantee for endorsement of the payment unless the Guarantee has been lost or destroyed, in which case proof of loss or destruction shall be furnished to the satisfaction of the Company.

b. When liability and the extent of loss or damage has been definitely fixed in accordance with these Conditions the loss or damage shall be payable within thirty (30) days thereafter.

### 10. Subrogation Upon Payment or Settlement.

Whenever the Company shall have settled and paid a claim under this Guarantee, all right of subrogation shall vest in the Company unaffected by any act of the Assured.

The Company shall be subrogated to and be entitled to all rights and remedies which the Assured would have had against any person or property in respect to the claim had this Guarantee not been issued. If requested by the Company, the Assured shall transfer to the Company all rights and remedies against any person or property necessary in order to perfect this right of subrogation. The Assured shall permit the Company to sue, compromise or settle in the name of the Assured and to use the name of the Assured in any transaction or litigation involving these rights or remedies.

If a payment on account of a claim does not fully cover the loss of the Assured the Company shall be subrogated to all rights and remedies of the Assured after the Assured shall have recovered its principal, interest, and costs of collection.

### 11. Arbitration.

Either the Company or the Assured may demand that the claim or controversy shall be submitted to arbitration pursuant to the Title Insurance Arbitration Rules of the American Land Title Association ("Rules"). Except as provided in the Rules, there shall be no joinder or consolidation with claims or controversies of other persons. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company

and the Assured arising out of or relating to this Guarantee, any service in connection with its issuance or the breach of a Guarantee provision, or to any other controversy or claim arising out of the transaction giving rise to this Guarantee. All arbitrable matters when the amount of liability in Schedule A is $2,000,000 or less shall be arbitrated at the option of either the Company or the Assured. All arbitrable matters when the amount of liability in Schedule A is in excess of $2,000,000 shall be arbitrated only when agreed to by both the Company and the Assured. Arbitration pursuant to this Guarantee and under the Rules shall be binding upon the parties. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court of competent jurisdiction.

## 12. Liability Limited to This Guarantee; Guarantee Entire Contract.

a. This Guarantee together with all endorsements, if any, attached hereto by the Company is the entire Guarantee and contract between the Assured and the Company.

In interpreting any provision of this Guarantee, this Guarantee shall be construed as a whole.

b. Any claim of loss or damage, whether or not based on negligence, or any action asserting such claim, shall be restricted to this Guarantee.

c. No amendment of or endorsement to this Guarantee can be made except by a writing endorsed hereon or attached hereto signed by either the President, a Vice President, the Secretary, an Assistant Secretary, or validating officer or authorized signatory of the Company.

## 13. Notices, Where Sent.

All notices required to be given the Company and any statement in writing required to be furnished the Company shall include the number of this Guarantee and shall be addressed to the Company at: 201 N. New York Avenue, Suite 200, Winter Park, Florida 32789.



Premium Title
of California, Inc.

Premium Title of California
100 Pacifica, Suite 205
Irvine, CA  92618
Phone:  (855) 236-1110

## TRUSTEE'S SALE GUARANTEE
## ISSUED AT
### Westcor Land Title Insurance Company
## SCHEDULE A

Date of Guarantee: **March 9, 2012 at 7:30 A.M.**

Your Reference: **2012-18612**

Order No.: **TSG1202-CA-311649**
Liability: **$193,000.00**
Fee: **$656.00**

1.  Name of Assured:

    **Trustee:**

    **Western Progressive, LLC**

    **Beneficiary:**

    **Ocwen Loan Servicing, LLC Deutsche Bank National Trust Company as Trustee for the registered holders of Morgan Stanley ABS Capital I Inc. Trust 2007-NC4 Mortgage pass through certificates, Series 2007-NC4**

2.  The estate or interest in the land hereinafter described or referred to covered by this Guarantee is:

    **FEE SIMPLE**

3.  Title to said estate or interest at the date hereof is vested in:

    **Doris Mae Tinson, an unmarried woman**

4.  The land referred to in this Guarantee is situated in the County of **Los Angeles**, State of **California**, and is identified as more particularly described in Exhibit "A" attached hereto and made a part hereof.

CLTA Guarantee Form No. 22

TSG1202-CA-311649

# EXHIBIT "A"

**Lot 471 of Tract 668, in the city of Los Angeles, County of Los Angeles, State of California, as per map recorded in book 15 pages 194 and 195 of maps, in the office of the county recorder of said county.**

**Note:**   For information purposes only, the purported street address of said land as determined from the latest County Assessor's Roll is:

**5468 10th Avenue, Los Angeles, CA 90043**

The Assessor's Parcel Number, as determined from the latest County Assessor's Roll is:

**5006-014-001**

An inspection of said land has not been made, and no assurances are hereby given or implied as to the location of the land herein described.

TSG1202-CA-311649

# TRUSTEE'S SALE GUARANTEE
## SCHEDULE B

### EXCEPTIONS:

The title to said estate or interest is subject to the following Exceptions:

1. Property taxes, including general and special taxes, personal property taxes, if any, and any assessments collected with taxes, to be levied for the fiscal year 2012-2013 which are a lien not yet payable.

2. Property taxes, including general and special taxes, personal property taxes, if any, and any assessments collected with taxes, for the fiscal year 2011-2012.

| | |
|---|---|
| 1st Installment: | $420.33 Delinquent |
| Penalty: | $42.03 Due With Installment |
| 2nd Installment: | $420.32 Open |
| Penalty (inc cost): | $52.03 Due With Installment If Paid After 04/10/2012 |
| Exemption: | $7,000.00 |
| Code Area: | 0000212 |
| Assessment No.: | 5006-014-001 |

3. Supplemental or escaped assessments of property taxes, if any, assessed pursuant to the Revenue and Taxation Code of the State of California.

4. Said property has been declared Tax-Defaulted for non-payment of delinquent taxes for the fiscal year 2009-2010.

Amount to redeem by March 31, 2012 for the above stated year (and subsequent years, if any) is $668.78.

Amount to redeem by April 30, 2012 for the above stated year (and subsequent years, if any) is $675.59.

Amount to redeem by May 31, 2012 for the above stated year (and subsequent years, if any) is $682.40.

5. An easement for the purpose shown below and rights incidental thereto as set forth in a document

| | |
|---|---|
| Purpose: | Public Utilities |
| Recorded: | Instrument/File No. Book 6220, Page 291 of Official Records |
| Affects: | The Rear 2 Feet |

6. An easement for the purpose shown below and rights incidental thereto as set forth in a document

| | |
|---|---|
| Purpose: | Public Utilities |
| Recorded: | May 19, 1947 in Instrument/File No.1714 of Official Records |
| Affects: | The Rear 2 Feet |

TSG1202-CA-311649

7. A deed of trust to secure an indebtedness in the amount shown below, and any other obligations secured thereby.

Amount:          $287,000.00
Dated:           December 26, 2006
Trustor:         Doris Mae Tinson, unmarried woman
Trustee:         Financial Title Co.
Lender:          New Century Mortgage Corporation
Beneficiary:     Mortgage Electronic Registration Systems, Inc.
Recorded:        January 8, 2007 in Instrument/File No.20070034170 of Official Records

A substitution of trustee under said deed of trust which names as the substituted trustee, the following

Trustee:         Old Republic Default Management Services, a Division of Old Republic
                 National Title Insurance Company
Recorded:        August 19, 2009 in Instrument/File No.20091274532 of Official Records

An assignment of the beneficial interest under said deed of trust which names

As Assignee:     Deutsche Bank National Trust Company as Trustee for the registered
                 holders of Morgan Stanley ABS Capital I Inc. Trust 2007-NC4 Mortgage
                 pass through certificates, Series 2007-NC4
Recorded:        February 22, 2012 in Instrument/File No.20120277674 of Official
                 Records

A Notice of Default under the terms of said deed of trust

Recorded:        March 9, 2012 in Instrument/File No.12-0374014 of Official Records

8. A deed of trust to secure an indebtedness in the amount shown below, and any other obligations secured thereby.

Amount:          $70,000.00
Dated:           October 19, 2006
Trustor:         Doris Mae Tinson
Trustee:         Celes King III & Associates or Teri King
Beneficiary:     Sinle Insurance Company, Inc, a New York Corporation
Recorded:        July 9, 2007 in Instrument/File No.20071621843 of Official Records

9. A homestead declaration

Executed by:     Doris Mae Tinson
Dated:           October 24, 1974
Recorded:        November 4, 1974 in Instrument/File No.1974-2626 of Official Records.

10. A homestead declaration

Executed by:     Doris Mae Tinson
Dated:           March 2, 2006
Recorded:        March 8, 2006 in Instrument/File No.06 0498680 of Official Records.

TSG1202-CA-311649

11. A court order for installment payments of spousal and/or child support, to be made by:

| | |
|---|---|
| Debtor: | Warren Johnson |
| Court: | Superior |
| Case No.: | SCD17303 |
| Recorded: | June 12, 1990 in Instrument/File No.90-1041851 of Official Records |
| Contact: | District Attorney's Office |
| | Bureau of Family Support Operations |
| | 211 East Alondra Boulevard |
| | Compton,California 90220 |

12. An abstract of judgment for the amount shown below and any other amounts due.

| | |
|---|---|
| Debtor: | Tinson,Doris M. |
| Creditor: | Dept.of Water & Power |
| Date entered: | January 8, 2002 |
| County: | Los Angeles |
| Court: | San Fernando Court House |
| Case No.: | 01S04084 |
| Amount: | $5,009.95 Plus Penalty and Cost |
| Recorded: | November 25, 2002 in Instrument/File No.02 2857427 of Official Records |

13. An abstract of judgment for the amount shown below and any other amounts due.

| | |
|---|---|
| Debtor: | Tinson,Doris M. |
| Creditor: | Dept of Water & Power of the C |
| Date entered: | August 14, 2003 |
| County: | Los Angeles |
| Court: | San Fernando Court House |
| Case No.: | 03S02075 |
| Amount: | $4,501.63 Plus Penalty and Cost |
| Recorded: | December 2, 2003 in Instrument/File No.03 3634979 of Official Records |

14. Water rights, claims or title to water, whether or not shown by the public records.

15. Any bankruptcy proceeding that is not disclosed by the acts that would afford notice as to said land, pursuant to Title 11 U.S.C. 549 (c) of the Bankruptcy Reform Act of 1978, as amended.

CLTA Guarantee Form No. 22

TSG1202-CA-311649

**TRUSTEE'S SALE GUARANTEE**
**SCHEDULE C**
**INFORMATION FOR TRUSTEE**
**Relative to the Deed of Trust shown as Exception No. 7 in Schedule B.**

1. City in which said land is located: **Los Angeles**
If not in a city, judicial district in which said land is located: None

2. Attention is called to the Soldier's and Sailor's Civil Relief Act of 1940 and amendments thereto and The Military Reservist Relief Act of 1991 (Sec. 800 to 810, Military and Veterans Code) which contain inhibitions against the sale of land under a deed of trust if the owner is entitled to the benefits of said Acts.

3. Attention is called to the Federal Tax Lien Act of 1966 (Public Law 89-719) which, among other things, provides for the giving of written Notice of Sale in a specified manner to the Secretary of Treasury or his or her delegate as a requirement for the discharge or divestment of a Federal Tax Lien in a non-judicial sale, and establishes with respect to such lien a right in the United States to redeem the property within a period of 120 days from the date of any such sale.

4. The names and addresses of persons who have recorded requests, as provided by Section 2924b (a) and (d) of the Civil Code, for a copy of Notice of Default and for a copy of Notice of Sale are:

Doris Mae Tinson
5468 10th Avenue
Los Angeles, CA 90043

5. The names and addresses of additional persons who, as provided by Section 2924b (c)(1) and (2) of the Civil Code, are entitled to receive a copy of Notice of Default and a copy of Notice of Sale are:

Doris Mae Tinson
5468 10th Avenue
Los Angeles, CA 90043-2526

Warren L.Johnson
C/o Aerospace Mgmt
14541 Cerise Ave
Hawthrone, Ca 90250

Sinle Insurance Company, Inc
5468 10th Avenue
LA, CA 90043

6. NOTE: The names of persons and addresses disclosed by the records examined, other than those to whom notice is required by Section 2924b of the Civil Code to be directed, who might be interested in receiving a copy of the Notice of Default and a copy of the Notice of Trustees Sale are:

Brenda Johnson
1403 S.Willowbrook
Compton,CA 90220

Brenda Johnson
C/o District Attorney's Office
Bureau of Family Support Operations
211 East Alondra Boulevard
Compton,California 90220

CLTA Guarantee Form No. 22

TSG1202-CA-311649

Dept.Of Water & Power
8501 Arleta Avenue Room 1A
Sun Valley CA 91352

Dept Of Water & Power Of The City Of LA
PO BOX 10210
Van Nuys CA 914100210

7. The names and addresses of state taxing agencies which, as provided by Section 2924b (c)(3) of the Civil Code, are entitled to receive a copy of Notice of Sale are:

None

8. The addresses of the Internal Revenue Service which, as provided by Section 2924b (c) (4) of the Civil Code, are entitled to receive a copy of Notice of Sale are:

None

9. Legal Publications:

**Daily Commerce**

Attention is called to SB 1137 (California Civil Code Section 2923.5)and any amendments thereto, which, among other things requires the Mortgagee, Trustee, Beneficiary or Authorized Agent, to contact homeowners to explore restructuring options before initiating the nonjudicial foreclosure process. The statute became operative on September 6, 2008 and applies to loans made from January 1, 2003 to December 31, 2007, secured by deeds of trust on owner-occupied residential property. A special declaration must be attached to or made a part of a Notice of Default recorded on or after September 8, 2008. If a Notice of Default was recorded prior to September 8, 2008, a Notice of Sale must also include the special declaration which confirms that the Mortgagee, Trustee, Beneficiary, or Authorized Agent, has complied with the due diligence requirements in contacting the borrower or that the borrower has surrendered the property.



State: CA   County: Los Angeles                                          Order Number: TSG1202-CA-311649

# ENDORSEMENT

Issued By

## WESTCOR LAND TITLE INSURANCE COMPANY

a California corporation, herein called the Company,

The Company hereby assures the Assured that, subsequent to the date of the Guarantee issued under the above number, no matters are shown by the records referred to in that Guarantee which would affect the assurances in said Guarantee other than the following:

**NO CHANGES**

This endorsement is made a part of said Guarantee and is subject to the LIABILITY EXCLUSIONS AND LIMITATIONS contained therein.  The total liability of the Company under said Guarantee and under this endorsement shall not exceed, in the aggregate, the amount stated in said Guarantee.

Dated July 10, 2012

Issued By:

_____
Authorized Signatory

CLTA Guarantee Form No. 19 (9-24-70) Date-Down Endorsement                         EN-572 (10/14/10)

State: CA   County: Los Angeles

Order Number: TSG1202-CA-311649

# ENDORSEMENT

Issued By

## WESTCOR LAND TITLE INSURANCE COMPANY

A California corporation, herein called the Company,

The Company hereby assures the Assured that, subsequent to the date of the Guarantee issued under the above number, no matters are shown by the records referred to in that Guarantee which would affect the assurances in said Guarantee other than the following:

**NO CHANGES**

This endorsement is made a part of said Guarantee and is subject to the LIABILITY EXCLUSIONS AND LIMITATIONS contained therein.  The total liability of the Company under said Guarantee and under this endorsement shall not exceed, in the aggregate, the amount stated in said Guarantee.

Dated September 18, 2012

Issued By:

_____
Authorized Signatory

CLTA Guarantee Form No. 19 (9-24-70) Date-Down Endorsement

EN-572 (10/14/10)

State: CA   County: Los Angeles                              Order Number: TSG1202-CA-311649

# ENDORSEMENT

Issued By

## WESTCOR LAND TITLE INSURANCE COMPANY

A California corporation, herein called the Company,

The Company hereby assures the Assured that, subsequent to the date of the Guarantee issued under the above number, no matters are shown by the records referred to in that Guarantee which would affect the assurances in said Guarantee other than the following:

A substitution of trustee under said deed of trust which names as the substituted trustee, the following

Trustee:              Western Progressive, LLC
Recorded:             October 1, 2012 in (instrument) 20121471339 of Official Records

A Notice of Trustee's Sale under said deed of trust

Recorded:             October 1, 2012 in (instrument) 20121471340 of Official Records

**REFER ITEM # 7 OF TSG REPORT**

NOTICE OF BUILDING(S), STRUCTURE(S), OR PREMISES CLASSIFIED AS EITHER  HAZARDOUS, SUBSTANDARD OR A NUISANCE - ABATEMENT PROCEEDINGS

Recorded:             December 24, 2012 in (instrument) 20121991900 of Official Records

**Mailing Address:**

Department of Building and Safety
Code Enforcement Bureau
3550 Wilshire Blvd., Suite 1800
Los Angeles, CA 90010

This endorsement is made a part of said Guarantee and is subject to the LIABILITY EXCLUSIONS AND LIMITATIONS contained therein.  The total liability of the Company under said Guarantee and under this endorsement shall not exceed, in the aggregate, the amount stated in said Guarantee.

Dated April 2, 2013
Prop Cover Date March 25, 2013

Issued By:

_____

Authorized Signatory

CLTA Guarantee Form No. 19 (9-24-70) Date-Down Endorsement                      EN-572 (10/14/10)

State: CA   County: Los Angeles

Order Number: TSG1202-CA-311649

# ENDORSEMENT

Issued By

## WESTCOR LAND TITLE INSURANCE COMPANY

A California corporation, herein called the Company,

The Company hereby assures the Assured that, subsequent to the date of the Guarantee issued under the above number, no matters are shown by the records referred to in that Guarantee which would affect the assurances in said Guarantee other than the following:

**NO CHANGES**

This endorsement is made a part of said Guarantee and is subject to the LIABILITY EXCLUSIONS AND LIMITATIONS contained therein.  The total liability of the Company under said Guarantee and under this endorsement shall not exceed, in the aggregate, the amount stated in said Guarantee.

Dated April 9, 2013
Prop Cover Date April 01, 2013

Issued By:

_____

Authorized Signatory

CLTA Guarantee Form No. 19 (9-24-70) Date-Down Endorsement

EN-572 (10/14/10)

State: CA   County: Los Angeles                              Order Number: TSG1202-CA-311649

# ENDORSEMENT

Issued By

## WESTCOR LAND TITLE INSURANCE COMPANY

A California corporation, herein called the Company,

The Company hereby assures the Assured that, subsequent to the date of the Guarantee issued under the above number, no matters are shown by the records referred to in that Guarantee which would affect the assurances in said Guarantee other than the following:

**NO CHANGES**

This endorsement is made a part of said Guarantee and is subject to the LIABILITY EXCLUSIONS AND LIMITATIONS contained therein.  The total liability of the Company under said Guarantee and under this endorsement shall not exceed, in the aggregate, the amount stated in said Guarantee.

Dated April 16, 2013
Prop Cover Date April 10, 2013

Issued By:

_____

Authorized Signatory

State: CA   County: Los Angeles

Order Number: TSG1202-CA-311649

# ENDORSEMENT

Issued By

## WESTCOR LAND TITLE INSURANCE COMPANY

A California corporation, herein called the Company,

The Company hereby assures the Assured that, subsequent to the date of the Guarantee issued under the above number, no matters are shown by the records referred to in that Guarantee which would affect the assurances in said Guarantee other than the following:

**NO CHANGES**

This endorsement is made a part of said Guarantee and is subject to the LIABILITY EXCLUSIONS AND LIMITATIONS contained therein.  The total liability of the Company under said Guarantee and under this endorsement shall not exceed, in the aggregate, the amount stated in said Guarantee.

Dated: February 5, 2014

Prop Cover Date: January 27, 2014

Issued By:

_____

Authorized Signatory

CLTA Guarantee Form No. 19 (9-24-70) Date-Down Endorsement

EN-572 (10/14/10)

State: CA   County: Los Angeles

Order Number: TSG1202-CA-311649

# ENDORSEMENT

Issued By

## WESTCOR LAND TITLE INSURANCE COMPANY

A California corporation, herein called the Company,

The Company hereby assures the Assured that, subsequent to the date of the Guarantee issued under the above number, no matters are shown by the records referred to in that Guarantee which would affect the assurances in said Guarantee other than the following:

A tax lien for the amount shown and any other amounts due, in favor of the State of California.

| | |
|---|---|
| Amount: | $5,172.23 plus penalty & cost |
| Filed by: | Franchise Tax Board of the State of California |
| Taxpayer: | Doris M Tinson |
| Certificate No. | 14126656034 |
| Recorded: | May 07, 2014 in (Instrument) 20140471427 of official Records |

Mail to:

STATE OF CALIFORNIA FRANCHISE TAX BOARD
Special Procedures Section
PO BOX 2952
Sacramento CA 95812-2952

This endorsement is made a part of said Guarantee and is subject to the LIABILITY EXCLUSIONS AND LIMITATIONS contained therein.  The total liability of the Company under said Guarantee and under this endorsement shall not exceed, in the aggregate, the amount stated in said Guarantee.

Dated: June 21, 2014
Prop Cover Date: June 11, 2014

Issued By:

_____

Authorized Signatory

CLTA Guarantee Form No. 19 (9-24-70) Date-Down Endorsement

EN-572 (10/14/10)

State: CA   County: Los Angeles                                   Order Number: TSG1202-CA-311649

# ENDORSEMENT

Issued By

## WESTCOR LAND TITLE INSURANCE COMPANY

A California corporation, herein called the Company,

The Company hereby assures the Assured that, subsequent to the date of the Guarantee issued under the above number, no matters are shown by the records referred to in that Guarantee which would affect the assurances in said Guarantee other than the following:

**NO CHANGES**

This endorsement is made a part of said Guarantee and is subject to the LIABILITY EXCLUSIONS AND LIMITATIONS contained therein.  The total liability of the Company under said Guarantee and under this endorsement shall not exceed, in the aggregate, the amount stated in said Guarantee.

Dated: August 9, 2014
Prop Cover Date: July 30, 2014

Issued By:

_____

Authorized Signatory

CLTA Guarantee Form No. 19 (9-24-70) Date-Down Endorsement                    EN-572 (10/14/10)

State: CA   County: Los Angeles                                   Order Number: TSG1202-CA-311649

# ENDORSEMENT

Issued By

## WESTCOR LAND TITLE INSURANCE COMPANY

A California corporation, herein called the Company,

The Company hereby assures the Assured that, subsequent to the date of the Guarantee issued under the above number, no matters are shown by the records referred to in that Guarantee which would affect the assurances in said Guarantee other than the following:

A tax lien for the amount shown and any other amounts due, in favor of the State of California.

| | |
|---|---|
| Amount: | $2,400.93 plus penalty & cost |
| Filed by: | Franchise Tax Board of the State of California |
| Taxpayer: | Doris M Tinson |
| Certificate No. | 14338624083 |
| Recorded: | December 05, 2014 in (Instrument) 20141312487 of official Records |

Mail to:

STATE OF CALIFORNIA FRANCHISE TAX BOARD
Special Procedures Section
PO BOX 2952
Sacramento CA 95812-2952

This endorsement is made a part of said Guarantee and is subject to the LIABILITY EXCLUSIONS AND LIMITATIONS contained therein. The total liability of the Company under said Guarantee and under this endorsement shall not exceed, in the aggregate, the amount stated in said Guarantee.

Dated: February 19, 2015
Prop Cover Date: February 09, 2015

Issued By:

_____

Authorized Signatory

CLTA Guarantee Form No. 19 (9-24-70) Date-Down Endorsement                          EN-572 (10/14/10)

State: CA   County: Los Angeles                                    Order Number: TSG1202-CA-311649

# ENDORSEMENT

Issued By

## WESTCOR LAND TITLE INSURANCE COMPANY

A California corporation, herein called the Company,

The Company hereby assures the Assured that, subsequent to the date of the Guarantee issued under the above number, no matters are shown by the records referred to in that Guarantee which would affect the assurances in said Guarantee other than the following:

A Notice of Trustee's Sale under the terms of said deed of trust

Recorded:                    03/17/2015 in  (instrument) 20150284473 of Official Records

Ref to item # 7 of TSG

The Effect of Grant Deed:

| | |
|---|---|
| Dated: | 05/01/2017 |
| Executed by: | Doris Mae Tinson, an unmarried woman |
| In favor of: | Doris Mae Tinson, an unmarried woman and Julianna D. Gin, a single woman, mother and daughter as joint tenans |
| Recorded: | 05/10/2017 in  (instrument) 20170519679 of Official Records |

Mail To:

Doris Mae Tinson
5468 10th Avenue,
Los Angeles, California 90043

Julianna D. Gin
5468 10th Avenue,
Los Angeles, California 90043

Notice of Pending Lien

| | |
|---|---|
| Filed by: | Department of Building and Safety Financial Services Division |
| Taxpayer: | Doris M Tinson |
| Recorded: | 09/13/2017 in (Instrument) 20171043585 of official Records |

Release of lien

Recorded:                    08/19/2015 in  (instrument) 20151016034 of Official Records

Ref to lien recorded to on May 07, 2014 in (Instrument) 20140471427

Release of lien

Recorded:                    08/19/2015 in  (instrument) 20151016035 of Official Records

Ref to lien recorded to on December 05, 2014 in (Instrument) 20141312487

CLTA Guarantee Form No. 19 (9-24-70) Date-Down Endorsement                          EN-572 (10/14/10)

Subject to proceedings pending in the bankruptcy court where a petition for relief was filed.

Name of Debtor:          Doris Mae Tinson
Date of Filing:          03/27/2015
U. S. District Court:    California Central Bankruptcy
Case No.:                2:2015bk14689

This endorsement is made a part of said Guarantee and is subject to the LIABILITY EXCLUSIONS AND LIMITATIONS contained therein.  The total liability of the Company under said Guarantee and under this endorsement shall not exceed, in the aggregate, the amount stated in said Guarantee.

Dated: November 8, 2018

Prop Cover Date:  10/22/2018

Issued By:

(Schwery, Patrick J)

_____

Authorized Signatory

State: CA   County: Los Angeles

Order Number: TSG1202-CA-311649

# ENDORSEMENT

Issued By

## WESTCOR LAND TITLE INSURANCE COMPANY

A California corporation, herein called the Company,

The Company hereby assures the Assured that, subsequent to the date of the Guarantee issued under the above number, no matters are shown by the records referred to in that Guarantee which would affect the assurances in said Guarantee other than the following:

A Notice of Trustee's Sale under the terms of said deed of trust

Recorded:              03/17/2015 In  (Instrument) 20150284473 of Official Records

Ref to item # 7 of TSG

The Effect of Grant Deed:

Dated:                 05/01/2017
Executed by:           Doris Mae Tinson, an unmarried woman
In favor of:           Doris Mae Tinson, an unmarried woman and Julianna D. Gin, a single woman, mother and
                       daughter as joint tenans
Recorded:              05/10/2017 in  (Instrument) 20170519679 of Official Records

Mail To:

Doris Mae Tinson
5468 10th Avenue,
Los Angeles, California 90043

Julianna D. Gin
5468 10th Avenue,
Los Angeles, California 90043

Notice of Pending Lien

Filed by:              Department of Building and Safety Financial Services Division
Taxpayer:              Doris M Tinson
Recorded:              09/13/2017 in (Instrument) 20171043585 of official Records

Release of lien

Recorded:              08/19/2015 in  (Instrument) 20151016034 of Official Records

Ref to lien recorded to on May 07, 2014 in (Instrument) 20140471427

Release of lien

Recorded:              08/19/2015 in  (instrument) 20151016035 of Official Records

Ref to lien recorded to on December 05, 2014 in (Instrument) 20141312487

CLTA Guarantee Form No. 19 (9-24-70) Date-Down Endorsement                          EN-572 (10/14/10)

Subject to proceedings pending in the bankruptcy court where a petition for relief was filed.

| | |
|---|---|
| Name of Debtor: | Doris Mae Tinson |
| Date of Filing: | 03/27/2015 |
| U. S. District Court: | California Central Bankruptcy |
| Case No.: | 2:2015bk14689 |

This endorsement is made a part of said Guarantee and is subject to the LIABILITY EXCLUSIONS AND LIMITATIONS contained therein.  The total liability of the Company under said Guarantee and under this endorsement shall not exceed, in the aggregate, the amount stated in said Guarantee.

Dated: November 8, 2018

Prop Cover Date:  10/22/2018

Issued By:

(Schwery, Patrick J)

_____

Authorized Signatory

State: CA   County: Los Angeles                                    Order Number: TSG1202-CA-311649

# ENDORSEMENT

Issued By

## WESTCOR LAND TITLE INSURANCE COMPANY

A California corporation, herein called the Company,

The Company hereby assures the Assured that, subsequent to the date of the Guarantee issued under the above number, no matters are shown by the records referred to in that Guarantee which would affect the assurances in said Guarantee other than the following:

A Notice of Trustee's Sale under the terms of said deed of trust

Recorded:                  November 13, 2018 in (Instrument) 20181142790 of Official Records

A Notice of Trustee's Sale under the terms of said deed of trust

Recorded:                  December 28, 2018 in (Instrument) 20181316601 of Official Records

**Ref to item # 7 of TSG**

A tax lien for the amount shown and any other amounts due, in favor of the United States of America, assessed by the District Director of Internal Revenue.

Federal Serial No.:       971050713
Taxpayer:                 Julianna D. Gin
Amount:                   $44714.68 Plus penalty and cost
Recorded:                 December 09, 2013 in (Instrument) 20131732200 of Official Records

**Mail to:**

**"Internal Revenue Service**
**24000 Avila Rd., MS 5905**
**Laguna Niguel, CA 92677"**

Subject to proceedings pending in the bankruptcy court where a petition for relief was filed.

**Bankruptcy case no 2:2015bk14689 debtor dismissed on 12/6/2018**

This endorsement is made a part of said Guarantee and is subject to the LIABILITY EXCLUSIONS AND LIMITATIONS contained therein. The total liability of the Company under said Guarantee and under this endorsement shall not exceed, in the aggregate, the amount stated in said Guarantee.

Dated: December 31, 2018
Prop Cover Date:  December 11, 2018

Issued By:

(Schwery, Patrick J)

_____

Authorized Signatory

State: CA  County: Los Angeles

Order Number: TSG1202-CA-311649

# ENDORSEMENT

Issued By

## WESTCOR LAND TITLE INSURANCE COMPANY

A California corporation, herein called the Company,

The Company hereby assures the Assured that, subsequent to the date of the Guarantee issued under the above number, no matters are shown by the records referred to in that Guarantee which would affect the assurances in said Guarantee other than the following:

NO CHANGES

This endorsement is made a part of said Guarantee and is subject to the LIABILITY EXCLUSIONS AND LIMITATIONS contained therein. The total liability of the Company under said Guarantee and under this endorsement shall not exceed, in the aggregate, the amount stated in said Guarantee.

Dated: March 26, 2019
Prop Cover Date:  3/14/2019

Issued By:

(Schwery, Patrick J)

_____
Authorized Signatory

CLTA Guarantee Form No. 19 (9-24-70) Date-Down Endorsement

EN-572 (10/14/10)

State: CA   County: Los Angeles

Order Number: TSG1202-CA-311649

# ENDORSEMENT

Issued By

## WESTCOR LAND TITLE INSURANCE COMPANY

A California corporation, herein called the Company,

The Company hereby assures the Assured that, subsequent to the date of the Guarantee issued under the above number, no matters are shown by the records referred to in that Guarantee which would affect the assurances in said Guarantee other than the following:

NO CHANGES

This endorsement is made a part of said Guarantee and is subject to the LIABILITY EXCLUSIONS AND LIMITATIONS contained therein. The total liability of the Company under said Guarantee and under this endorsement shall not exceed, in the aggregate, the amount stated in said Guarantee.

Dated: April 2, 2019
Prop Cover Date: 3/22/2019

Issued By:

(Schwery, Patrick J)

_____

Authorized Signatory

EN-572 (10/14/10)

# **ATTACHMENT 8: NOTICE**

# AFFIDAVIT OF MAILING

**Zieve, Brodnax & Steele, LLP**

Mailing Number 0001239-01

T.S. No.: 19001573

Loan No.:

STATE OF **California**    }
COUNTY OF **Orange**

The declarant, whose signature appears below, states that (s)he is over the age of eighteen (18) years; is employed in San Diego County, at 9620 Ridgehaven Court, Suite A, San Diego, CA 92123; by **iMailTracking, LLC** acting on behalf of **Zieve, Brodnax & Steele, LLP** and that on 4/16/2019, (s)he caused to be mailed copies of the document entitled _____ CA Surplus Notification Letter via certified or registered mail and first class mail with postage prepaid, and that such envelope was sealed and deposited in the mail and addressed to the person(s) in attached Exhibit "A".

I declare under penalty of perjury that the foregoing is true and correct.

X_____

**Jacob Smith**

Zieve, Brodnax & Steele, LLP
30 Corporate Park, Suite 450,
Irvine, CA 92606
Phone: (714) 848-7920 Fax: (714) 848-7650

Dated:   April 16, 2019

**VIA CERTIFIED 1ST CLASS MAIL**

Re:   NOTICE OF SURPLUS PROCEEDS
        Servicer:                Western Progressive, LLC
        Property Address:        5468 10th Avenue
                                 Los Angeles, CA 90043
        Trustor:                 Doris Mae Tinson
        Trustee Sale Number:     2012-18612

## NOTICE OF PROCEEDS OF SALE

Dear Sir/Madame:

Zieve, Brodnax & Steele, LLP represents Western Progressive, LLC as successor trustee, which conducted a Trustee's Sale hereinafter ("Sale") on 04/02/2019 for the above referenced property. The property was purchased by a third-party at that Sale and the proceeds from the Sale exceeded the amount of the foreclosure and the indebtedness owed to the foreclosing beneficiary.

At the time of the Sale, you were listed as having an interest in the subject property which was extinguished by the foreclosure sale. You may, therefore, have a claim to all or a portion of the Sale proceeds remaining. If you wish to pursue any potential claim, you must send this office a claim, under penalty of perjury, specifying the amount of the claim to the date of the Trustee Sale, including an itemized statement of principal, interest and other charges **as of the date of the foreclosure**. The claim must be received by this office no later than **thirty (30) days** from the date of this Notice. For your convenience, an Affidavit of Claim has been provided.

NOTICE IS HEREBY GIVEN that you may be required to present proof that you hold an interest in the obligation and the security interest therefore.

Please be advised, in the event we do not hear from you within thirty (30) days of the date of this letter, we may disburse the proceeds to claimants in the order of priority of the written claims submitted to our office as trustee, or if priority is disputed, we may deposit the surplus funds with the superior court and request recovery of any reasonable attorney's fees and costs incurred as a result thereof. Please note that all claimants will be paid in order of their priority against the property. Your claim is not necessarily one that will be paid.

Very Truly Yours,

Zieve, Brodnax & Steele, LLP


Justice Walker
jwalker@zbslaw.com

Enclosure: Affidavit of Claim

Trustor:   Doris Mae Tinson
TS#        2012-18612

# AFFIDAVIT OF CLAIM FOR SURPLUS FUNDS
## (Former Owner)

The undersigned, _____ being first duly sworn, depose(s) and
say(s):

1. The undersigned was/were the owner of the real property located at
   _____ (the "Property").

2. A claim is hereby made for the remaining surplus funds, or for as much of said surplus
   funds as is available after payment of all prior liens and encumbrances against the
   Property.

3. I (we) represent(s) that I (we) may be entitled to all or a part of the surplus funds
   generated from that certain trustee sale that occurred on _____.

4. I (we) represent(s) and warrant(s) to Zieve, Brodnax & Steele, LLP ("ZBS"): (a) I (we)
   was (were) the owners of the Property described above on the date of the foreclosure
   sale; (b) I (we) have not assigned, transferred my (our) interest as owner(s) to any third
   person or executed any power of attorney in favor of any third person giving said third
   person a right or interest in said Property or surplus funds; (c) I (we) am (are) not aware
   of any judgment, lien(s) or abstract(s) recorded against the Property within the past ten
   years, nor am (are) I (we) liable under any Family Support Order under the Family Law
   Code or under any tax lien, state or federal, recorded against the Property.

5. I (we) acknowledge(s) that the specific purpose of this Statement of Claim is to induce
   ZBS to release funds to me/us. The surplus funds check is to be made payable in the
   name below and mailed to the following address:

   Name(s): _____
   Mailing address:_____
   _____
   Phone Number: _____
   E-Mail_____

6. I (we) acknowledge(s) that in the event any information I have provided to ZBS is
   incorrect or untrue, I (we) will become obligated to any judgment creditor or lienholder,
   and to ZBS, for any funds I (we) receive or obligations that ZBS or a lien claimant incurs
   collecting these surplus funds from me/us in the future, including any legal fees ZBS
   incurs in requiring me to repay the surplus funds to a third party, regardless of whether a
   lawsuit is filed to obtain the funds.

7. **Copy of Driver's License or Passport must be attached for each claimant.**

Trustor:   Doris Mae Tinson
TS#        2012-18612

I (we) am (are) authorized to execute this affidavit and am (are) over the age of eighteen years old.  I declare under penalty of perjury that the foregoing is true and correct.

Executed this ____ day of _____, 20____ at _____.

_____          _____
PRINT NAME                                               SIGNATURE

_____          _____
PRINT NAME                                               SIGNATURE

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |
| --- |

State of                          )
County of                       ) ss

On_____ before me, _____, a Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of _____ that the foregoing paragraph is true and correct.

WITNESS my hand and Official Seal

_____
Notary Public in and for said State

Trustor:   Doris Mae Tinson
TS#        2012-18612

# AFFIDAVIT OF CLAIM FOR SURPLUS FUNDS
## (Junior Lienholder)

The undersigned, _____ being first duly sworn, depose(s) and say(s):

1. The undersigned is the _____ under a
   _____ dated _____ and recorded on _____ in Book
   _____, Page _____ instrument no. _____ of the
   Official Records of _____ County, State of _____.

2. As of the date hereof, the undersigned has not been paid in full the amount of its claim under the
   said _____.

3. Claim is hereby made in the total amount of $_____. This figure represents unpaid
   principal, interest, late charges and any allowable costs or expenses, as of the date of the trustee
   sale **04/02/2019** (Attach an itemized accounting of the amount claimed as of the date of sale).

4. The surplus funds check is to be made payable in the name below and mailed to the
   following address:

   Name(s): _____

   Mailing address: _____

   _____

   Phone Number: _____

   E-Mail _____

5. I (we) acknowledge(s) that in the event any information I have provided to Zieve, Brodnax &
   Steele, LLP (ZBS) is incorrect or untrue, I (we) will become obligated to repay the surplus funds
   to ZBS.

I am authorized to execute this affidavit and am over the age of eighteen years old.  I declare under
penalty of perjury that the foregoing is true and correct.  *I (we) hold harmless and will release and*

Trustor:   Doris Mae Tinson
TS#        2012-18612

**discharge** Zieve, Brodnax & Steele, LLP and Western Progressive, LLC *from any and all unsuspected claims, demands and causes of action that may occur, if any.*

Executed this ____ day of _____, 20___ at _____.

By: _____   By:_____

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of                       )
County of                      ) ss

On_____ before me, _____ personally appeared
_____, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.  I certify under PENALTY OF PERJURY under the laws of the State of _____ that the foregoing paragraph is true and correct.

WITNESS my hand and Official Seal.

_____
Notary Public in and for said State

Exhibit A to Affidavit of Mailing

| | |
|---|---|
| Postal Class: | First Class |
| Mail Date: | 04/16/2019 |
| Type of Mailing: | CASURPLUS |
| Affidavit Attachment: | 0001239-01 000 6818 ZLaw000404 |

Sender: Zieve, Brodnax & Steele, LLP
30 Corporate Park Drive, Suite 450
Irvine CA 92606

1    (11)9690024879965523
Department of Building and Safety Code Enforcement Bureau
Wilshire Blvd.
Suite 1800
Los Angeles, CA 90010

2    (11)9690024879965554
Dept Of Water & Power Of The City Of LA
PO BOX 10210
Van Nuys, CA 91410-0210

3    (11)9690024879965608
Dept.Of Water & Power
8501 Arleta Avenue
Room 1A
Sun Valley, CA 91352

4    (11)9690024879965622
District Attorney`s Office Bureau of Family Support Operations
211 East Alondra Boulevard
Compton, CA 90220

5    (11)9690024879965653
Julianna D. Gin
5468 10th Avenue
Los Angeles, CA 90043

6    (11)9690024879965677
Internal Revenue Service
24000 Avila Rd
MS 5905
Laguna Niguel, CA 92677

7    (11)9690024879965714
Brenda Johnson
1403 S.Willowbrook
Compton, CA 90220

8    (11)9690024879965745
Brenda Johnson
C/o District Attorney`s Office Bureau of Family Support Operations
211 East Alondra Boulevard
Compton, CA 90220

9    (11)9690024879965776
Warren L Johnson
C/o Aerospace Mgmt
14541 Cerise Ave
Hawthrone, CA 90250

10    (11)9690024879965806
Sinle Insurance Company, Inc
5468 10th Avenue
Los Angeles, CA 90043

11    (11)9690024879965837
STATE OF CALIFORNIA FRANCHISE TAX BOARD Special Procedures Section
PO BOX 2952
Sacramento, CA 95812-2952

12        (11)9690024879965868
Doris Mae Tinson
5468 10th Avenue
Los Angeles, CA 90043-2526

Exhibit A to Affidavit of Mailing

Postal Class:     Electronic - Ret
Mail Date:       04/16/2019
Type of Mailing:   CASURPLUS
Affidavit Attachment:  0001239-01 000 6818 ZLaw000404

Sender: Zieve, Brodnax & Steele, LLP
30 Corporate Park Drive, Suite 450
Irvine CA 92606

1      71969002484055927479
       Department of Building and Safety Code Enforcement Bureau
       Wilshire Blvd.
       Suite 1800
       Los Angeles, CA 90010

2      71969002484055927493
       Dept Of Water & Power Of The City Of LA
       PO BOX 10210
       Van Nuys, CA 91410-0210

3      71969002484055927516
       Dept.Of Water & Power
       8501 Arleta Avenue
       Room 1A
       Sun Valley, CA 91352

4      71969002484055927530
       District Attorney`s Office Bureau of Family Support Operations
       211 East Alondra Boulevard
       Compton, CA 90220

5      71969002484055927554
       Julianna D. Gin
       5468 10th Avenue
       Los Angeles, CA 90043

6      71969002484055927578
       Internal Revenue Service
       24000 Avila Rd
       MS 5905
       Laguna Niguel, CA 92677

7      71969002484055927592
       Brenda Johnson
       1403 S.Willowbrook
       Compton, CA 90220

8      71969002484055927608
       Brenda Johnson
       C/o District Attorney`s Office Bureau of Family Support Operations
       211 East Alondra Boulevard
       Compton, CA 90220

9      71969002484055927622
       Warren L Johnson
       C/o Aerospace Mgmt
       14541 Cerise Ave
       Hawthrone, CA 90250

10     71969002484055927646
       Sinle Insurance Company, Inc
       5468 10th Avenue
       Los Angeles, CA 90043

11     71969002484055927660
       STATE OF CALIFORNIA FRANCHISE TAX BOARD Special Procedures Section
       PO BOX 2952
       Sacramento, CA 95812-2952

12       71969002484055927684
Doris Mae Tinson
5468 10th Avenue
Los Angeles, CA 90043-2526

# iMailTracking

## INVOICE

9620 Ridgehaven Ct Suite A
San Diego CA 92123
858-375-5875

Report for: ZLaw000404
Run Date: 4/16/2019
Ref. No.: 19001573
Mail Date: 4/16/2019

| Mail Type | Order Number | Recipients |
|---|---|---|
| CASURPLUS | 0001239-01 | 12 |
| CASURPLUS | 0001239-01 | 12 |

| Mail Class | | Total |
|---|---|---|
| FC | Postage | $6.00 |
| | Production | $6.00 |
| ER | Postage | $67.20 |
| | Production | $21.60 |

| | | |
|---|---|---|
| Postage Total: | | $73.20 |
| Production Total: | | $27.60 |
| Grand Total: | | $100.80 |

| Recipient Name | Recipient Address | Mail Class | | Total |
|---|---|---|---|---|
| Department of Building and Safety Code Enforcement Bure | Wilshire Blvd. Suite 1800 Los Angeles, CA 90010 | FC | Postage | $0.50 |
| | | | Production | $0.50 |
| | | ER | Postage | $5.60 |
| | | | Production | $1.80 |
| Dept Of Water & Power Of The City Of LA | PO BOX 10210 Van Nuys, CA 91410-0210 | FC | Postage | $0.50 |
| | | | Production | $0.50 |
| | | ER | Postage | $5.60 |
| | | | Production | $1.80 |
| Dept. Of Water & Power | 8501 Arleta Avenue Room 1A Sun Valley, CA 91352 | FC | Postage | $0.50 |
| | | | Production | $0.50 |
| | | ER | Postage | $5.60 |
| | | | Production | $1.80 |
| District Attorney's Office Bureau of Family Support Operaik | 211 East Alondra Boulevard Compton, CA 90220 | FC | Postage | $0.50 |
| | | | Production | $0.50 |
| | | ER | Postage | $5.60 |
| | | | Production | $1.80 |
| Julianna D. Gin | 5468 10th Avenue Los Angeles, CA 90043 | FC | Postage | $0.50 |

| Name | Address | Type | | Amount |
|---|---|---|---|---|
| Internal Revenue Service | 24000 Avila Rd MS 5905 Laguna Niguel, CA 92677 | ER | Production | $0.50 |
| | | | Postage | $5.60 |
| | | | Production | $1.80 |
| | | FC | Postage | $0.50 |
| | | | Production | $0.50 |
| | | | Postage | $5.60 |
| | | | Production | $1.80 |
| Brenda Johnson | 1403 S.Willowbrook Compton, CA 90220 | FC | Postage | $0.50 |
| | | | Production | $0.50 |
| | | ER | Postage | $5.60 |
| | | | Production | $1.80 |
| Brenda Johnson C/o District Attorney's Office Bureau of Fa 211 East Alondra Boulevard Compton, CA 90220 | | FC | Postage | $0.50 |
| | | | Production | $0.50 |
| | | ER | Postage | $5.60 |
| | | | Production | $1.80 |
| Warren L Johnson C/o Aerospace Mgmt | 14541 Cerise Ave Hawthrone, CA 90250 | FC | Postage | $0.50 |
| | | | Production | $0.50 |
| | | ER | Postage | $5.60 |
| | | | Production | $1.80 |
| Sinle Insurance Company, Inc | 5468 10th Avenue Los Angeles, CA 90043 | FC | Postage | $0.50 |
| | | | Production | $0.50 |
| | | ER | Postage | $5.60 |
| | | | Production | $1.80 |
| STATE OF CALIFORNIA FRANCHISE TAX BOARD Speci PO BOX 2952 Sacramento, CA 95812-2952 | | FC | Postage | $0.50 |
| | | | Production | $0.50 |
| | | ER | Postage | $5.60 |
| | | | Production | $1.80 |
| Doris Mae Tinson | 5468 10th Avenue Los Angeles, CA 90043-2526 | FC | Postage | $0.50 |
| | | | Production | $0.50 |
| | | ER | Postage | $5.60 |
| | | | Production | $1.80 |

# ATTACHMENTS 11a, 11b, & 12:
# ISSUES DETERMINING PRIORITIES

<u>ISSUES DETERMINING PRIORITIES</u>

Petitioner, Western Progressive, LLC, is successor trustee ("Trustee"), under a Deed of Trust executed by Doris Tinson, Unmarried woman ("Former Owner") executed December 26, 2006, which recorded on January 1, 2007 with the Official Records in the office of the Recorder of Los Angeles, California ("Official Records") as Instrument No. 20070034170. A true and correct copy of this Deed of Trust is attached hereto as **Exhibit "A".** Said Deed of Trust was secured with real property commonly known as 5468 10th Avenue, Los Angeles, CA 90043 ("Subject Property"), which was sold at a non-judicial foreclosure sale on April 2, 2019 as a result of a default under the terms of the Deed of Trust. Said non-judicial foreclosure sale resulted in the receipt of funds that exceeded the amount of funds due and owing under the Deed of Trust foreclosed upon. A true and correct copy of this Trustee's Deed Upon Sale is attached hereto as **Exhibit "B".**

Prior to the foreclosure sale date of April 2, 2019, a Quit Claim Deed and recorded on May 10, 2017 with the Official Records in the office of the Recorder of Los Angeles, California ("Official Records") as Instrument No.20170519679. Said Quit Claim deed was executed by the former owner Doris Mae Tinson, an unmarried woman vesting title to Doris Mae Tinson, an unmarried woman and Julianna D. Gin, a single woman, mother, and daughter as joint tenants. A true and correct copy of this Quit Claim Deed is attached hereto as **Exhibit "C".**

On or about April 16, 2019, pursuant to California Civil Code § 2924j(a), Trustee sent written notice to all persons with recorded interest in the real property as of the date immediately prior to the Trustee's sale who would be entitled to notice pursuant to subdivision (b) and (c) of Section 2924b.

On or about May 14, 2019, our office received from Consumer Law Defense Group representation documents indicating representation for Doris Mae Tinson, one of two former owners based on the aforementioned Grant Deed. They also provided the required former owner claim form for their client and former owner Doris Mae Tinson. A true and correct copy of these documents are attached hereto as **Exhibit "D".**

On or about May 17, 2019, our office received from the State of California Franchise Tax Board a letter confirming that they would not be submitting a claim against Doris Mae Tinson. They did provide a claim that is only against Julianna D. Gin, but claim doesn't appear to be based on any recorded lien instrument listed on the foreclosure title report, which was used to complete the foreclosure on subject property. A true and correct copy of claim documents against Julianna D. Gin only is attached hereto as **Exhibit "E"**

On or about May 20, 2019, Trustee received representation docs from The Law Offices of Bennett A. Rheingold indicating representation for Julianna D. Gin, one of the two former owners pursuant to the aforementioned Grant Deed. They also provided the required former owner claim form for their client Julianna D. Gin. A true and correct copy of these documents are attached hereto as **Exhibit "F".**

On June 21, 2019, our office received an email from Cynthia Margo with Consumer Defense Law Group who represents the former owner Doris Mae Tinson. Their email indicates their client is disputing any interest of Julianna D. Gin. Their client Doris Mae Tinson is stating that she we misled into signing the Quit Claim Deed placing Juliann D. Gin on title, which was done prior to the foreclosure sale date of April 2, 2019. A true and correct copy of this email is attached hereto as **Exhibit "G"**

On August 2, 2019, our office receive a call from Jessica Belmont, with Consumer Defense Law Group, who is representing Doris Mae Tinson. Per our conversation Jessica Belmont requested contact information for The Law Offices of Bennett A. Rheingold, who represents the other former owner Julianna D. Gin, as they want to speak to them to find out if they can work out an agreement or convince Julianna D. Gin to possibly withdrawal of her claim. Also on August 2, 2019, our office sent an email to Jessica Belmont providing the contact information for The Law Offices of Bennett A. Rheingold. A true and correct copy of the email is attached hereto as **Exhibit "H"**.

After numerous follow ups with Consumer Defense Law Group to find out if they've been able to work out an agreement with the other former owner attorney office The Law Office Of Bennett A. Rheingold. On September 30, 2019, an email was received from Jessica Belmont with Consumer Defense Law Group advising that they will be trying to contact the other law firm one last time. A true and correct copy of this email is attached hereto as **Exhibit "I"**.

On November 1, 2019, due to lack of response or confirmation that the two former owner attorney offices were able to work on out an agreement. Our office emailed Consumer Defense Law Group indicating that our office will be moving forward with a Petition for Declaration and Deposit for this file with the court based on their clients dispute to the Quit Claim deed placing Julianna D. Gin on title. A true and correct copy of this email is attached hereto as **Exhibit "J"**.

**Pursuant to California Civil Code 2924j(b), Trustee thoroughly exercised due diligence to determine the priority of timely written claims received. In this case, an actual conflict exists due to one of the former owners Doris Mae Tinson indicating that the Quit Claim Deed giving interest to Julianna D. Gin is fraudulent due to being misled to executed said Quit Claim Deed. Hence the Trustee seeks the Court's involvement to disburse the**

disburse the funds as required under California law. The Trustee is concerned about opening itself up to potential liability of disbursing funds to only one of the former owners and seeks the assistance of the Court in this matter. As such, Trustee seeks to deposit these funds with the court and to be discharged from further responsibility for the disbursement of sale proceeds pursuant to CA Civil Code 2924j(c).

# EXHIBIT A

RECORDING REQUESTED BY

## FINANCIAL TITLE COMPANY

WHEN RECORDED MAIL TO

New Century Mortgage Corp.
18400 Von Karman
Ste 1000
Irvine, CA 92612

Title No.: **00321125-DK1**



01/08/07

**20070034170**

THIS SPACE FOR RECORDER'S USE ONLY

# Deed of Trust

SEPARATE PAGE PURSUANT TO GOVT CODE 27361.6

Recording Requested By
New Century Mortgage
Corporation
Return To.
New Century Mortgage
Corporation
18400 Von Karman, Ste 1000
Irvine, CA 92612

Prepared By.
New Century Mortgage
Corporation
18400 Von Karman, Ste 1000
Irvine, CA 92612

[Space Above This Line For Recording Data]

# DEED OF TRUST

MIN 100488910115952953

DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21 Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated  December 26, 2006
together with all Riders to this document
(B) "Borrower" is DORIS MAE TINSON, Unmarried Woman

Borrower's address is 5468 10TH AVENUE , Los Angeles, CA 90043
                              Borrower is the trustor under this Security Instrument

(C) "Lender" is New Century Mortgage Corporation

Lender is a Corporation
organized and existing under the laws of California

1011595295

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3005 1/01

-6A(CA) (0207)
Page 1 of 16          Initials _DMT_

VMP MORTGAGE FORMS - (800)521-7291

Lender's address is **18400 Von Karman, Suite 1000, Irvine, CA 92612**

(D) "Trustee" is **FINANCIAL TITLE CO.**

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated **December 26, 2006**.
The Note states that Borrower owes Lender **TWO HUNDRED EIGHTY-SEVEN THOUSAND AND 00/100**                                                                                           Dollars
(U.S. **$287,000.00** ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **02/01/2037**.

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| [x] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [x] Other(s) [specify] |

**Prepayment Rider, ARM Rider Addendum**

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials ____

1011595295

-6A(CA) (0207)                                      Page 2 of 15                                      Form 3005   1/01

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
         County                    of            Los Angeles                  :
      [Type of Recording Jurisdiction]              [Name of Recording Jurisdiction]
See Legal Description Attached Hereto and Made a Part Hereof EXHIBIT "A"

Parcel ID Number: 5006-014-001                    which currently has the address of
5468 10TH AVENUE                                                       [Street]
Los Angeles                              [City], California 90043        [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

-6A(CA) (0207)                      Page 3 of 15          Initials                1011595295
                                                                                 Form 3005  1/01

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

Initials: _____

1011595295

Form 3005   1/01

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien, in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien  Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires  What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense  Lender is under no obligation to purchase any particular type or amount of coverage  Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates  If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower  Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened  During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds  Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower  If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

1011595295

07 0034170

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

Initials ___

1011595295

Form 3005   1/01

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction  (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value  Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

1011595295

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Initials

**1011595295**

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

1011595295

Initials

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

1011595295

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

1011595295

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

*Doris Tinson*

DORIS TINSON

(Seal)
-Borrower

(Seal)
-Borrower

(Seal)
-Borrower

(Seal)
-Borrower

(Seal)
-Borrower

(Seal)
-Borrower

(Seal)
-Borrower

(Seal)
-Borrower

1011595295

-SA(CA) (0207)

Page 14 of 15

Form 3005   1/01

17

**State of California**
**County of** *Los Angeles*                                                   } ss.

On *December 20, 2006*          before me, *Ana M. Gonzalez Notary Public*
                                                           personally appeared

*DORIS TINSON*

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument

WITNESS my hand and official seal.

ANA M. GONZALEZ
Commission # 1425526
Notary Public - California
Los Angeles County
My Comm. Expires Jun 20, 2007

(Seal)

07 08241G

Initials

1011595295
Form 3005   1/01

MIN: 100488910115952953

# ADJUSTABLE RATE RIDER

(LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 26th day of December, 2006, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to

New Century Mortgage Corporation

("Lender") of the same date and covering the property described in the Security Instrument and located at   5468 10TH AVENUE, Los Angeles, CA  90043

(Property Address)

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A.  INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of 9.500 %. The unpaid principal of the Note is being amortized over an assumed 40 -year period (the "Amortization Period"). The unpaid principal of the Note is fully due and payable on the maturity date of the Note. The Note provides for changes in the interest rate and the monthly payments, as follows

4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A)  Change Dates
The interest rate I will pay may change on the first day of February, 2009, and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

NCMC
Six Month LIBOR
Multi-state Balloon Adjustable Rate Rider
RE- 560 (101906)                              Page 1 of 3

1011595295
Initials

19

**(B)  The Index**
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information.  The Note Holder will give me notice of this choice.

**(C)  Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding **Six And Fifty-five Hundredth(s)** percentage points ( 6.550 %) to the Current Index.  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe on the Change Date in full over the remaining Amortization Period at my new interest rate in substantially equal payments.  The result of this calculation will be the new amount of my monthly payment.  Notwithstanding the Amortization Period applicable to this Note, the entire unpaid principal amount will be fully due and payable on the Maturity Date.

**(D)  Limit on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than 11.500 % or less than 9.500 %.  Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One And One-half** percentage points (1.500 %) from the rate of interest I have been paying for the preceding 6 months.  My interest rate will never be greater than 16.500 %.

**(E)  Effective Date of Changes**
My new interest rate will become effective on each Change Date.  I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)  Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change.  The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B.  TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.**  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by

07  0053417 0

Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_Doris Tinson_ (Seal)
/DORIS TINSON                  -Borrower

                              (Seal)                              (Seal)
                              -Borrower                           -Borrower

                              (Seal)                              (Seal)
                              -Borrower                           -Borrower

                              (Seal)                              (Seal)
                              -Borrower                           -Borrower

                              (Seal)                              (Seal)
                              -Borrower                           -Borrower

NCMC
Six Month LIBOR
Multi-state Balloon Adjustable Rate Rider          Page 3 of 3                    1011595295
RE-550 (101806)                                                                  Initials _____

MIN: 100488910115952953

# ADJUSTABLE RATE RIDER ADDENDUM
### (Libor Index - Rate Caps)

This Adjustable Rate Rider Addendum is made this **26th** day of **December** **2006**, and is incorporated into and shall be deemed to amend and supplement the Promissory Note (the "Note") and Mortgage, Deed of Trust or Security Deed (the "Security Instrument") and Adjustable Rate Rider (the "Rider") of the same date given by the undersigned (the "Borrower") to secure repayment of Borrower's Note to

**New Century Mortgage Corporation**                                    (the "Lender").

Property securing repayment of the Note is described in the Security Instrument and located at:

**5468 10TH AVENUE, Los Angeles, CA 90043**

(Property Address)

To the extent that the provisions of this Adjustable Rate Rider Addendum are inconsistent with the provisions of the Note and/or Security Instrument and/or Rider, the provisions of this Addendum shall prevail over and supersede any such inconsistent provisions of the Note and/or Security Instrument and/or Rider.

In addition to the covenants and agreements made in the Note, Security Instrument, and Rider, Borrower and Lender further covenant and agree as follows:

**4.     (D) LIMITS ON INTEREST RATE CHANGES**

The interest rate I am required to pay at the first change date will not be greater than **11.500** % or less than **9.500** %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One And One-half** percentage point(s) ( **1.500** %) from the rate of interest I have been paying for the preceding **6** months. My interest rate will never be greater than **16.500** % or less than **9.500** %.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider Addendum.

*Doris Tinson*

**DORIS TINSON**

**1011595295**

MIN: 100488910115952953

# PREPAYMENT RIDER
# ADJUSTABLE RATE LOAN

This Prepayment Rider is made this 26th      day of December      2006     , and is incorporated into and shall be deemed to amend and supplement the Promissory Note (the "Note") and Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure repayment of Borrower's Note to

New Century Mortgage Corporation                                                (the "Lender").

To the extent that the provisions of this Prepayment Rider are inconsistent with the provisions of the Note and/or Security Instrument, the provisions of this rider shall prevail over and shall supersede any such inconsistent provisions of the Note and/or Security Instrument.

In addition to the covenants and agreements made in the Note and Security Instrument, the Borrower and Lender further covenant and agree as follows:

**5. BORROWERS RIGHT TO PREPAY**
I have the right to make prepayments of principal any time before they are due. A payment of principal only is known as a "prepayment". When I make a prepayment, I will tell the Note Holder in writing I am doing so. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment.

If within  2  year(s) from the date of execution of the Security Instrument, I make a full prepayment or, in certain cases a partial prepayment, and the total of such prepayment(s) in any 12-month period exceeds TWENTY PERCENT (20%) of the original principal amount of this loan, I will pay a prepayment charge in an amount equal to the payment of six (6) months advance interest on the amount by which the total of my prepayment(s) within that 12-month period exceeds TWENTY PERCENT (20%) of the original principal amount of the loan.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Prepayment Rider:

DORIS TINSON

# EXHIBIT 'A'

**All that certain real property situated in the County of Los Angeles, State of California, described as follows:**

**LOT 471 OF TRACT NO. 668, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 15 PAGES 194 AND 195 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.**

# EXHIBIT B

TS No.: 2012-18612

RECORDING REQUESTED BY:
**Western Progressive, LLC**

AND WHEN RECORDED TO:
**Magnum Property Investments, LLC**
**PO Box 517**
**Agoura Hills, CA 91376**

**Forward Tax Statements to**
**the address given above**

SPACE ABOVE LINE FOR RECORDER'S USE

**TS No.: 2012-18612**                    **Order No.: 1202-CA-311649**

## TRUSTEE'S DEED UPON SALE

**A.P.N.: 5006-014-001**                    Transfer Tax: $0.00

THIS TRANSACTION IS EXEMPT FROM THE REQUIREMENTS OF THE REVENUE AND TAXATION CODE, SECTION 480.3

The Grantee Herein **was not** the Foreclosing Beneficiary.
The Amount of the Unpaid Debt was **$307,668.85**
The Amount Paid by the Grantee was **$465,000.00**
Said Property is in the City of **LOS ANGELES**, County of **Los Angeles**

**Western Progressive, LLC** , as Trustee, (whereas so designated in the Deed of Trust hereunder more particularly described or as duly appointed Trustee) does hereby **GRANT** and **CONVEY** to

**Magnum Property Investments, LLC a Delaware Limited Liability Company**

Version 1.1 CA TDUS 0417                    Page 1 of 3

TS No.: 2012-18612

# TRUSTEE'S DEED UPON SALE

**Order No.: 1202-CA-311649**

(herein called Grantee) but without covenant or warranty, expressed or implied, all right title and interest conveyed to and now held by it as Trustee under the Deed of Trust in and to the property situated in the county of **Los Angeles** , State of California, described as follows:

**LOT 471 OF TRACT 668, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 15 PAGES(S) 194 AND 195 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.**

This conveyance is made in compliance with the terms and provisions of the Deed of Trust executed by, **DORIS MAE TINSON, UNMARRIED WOMAN** as Trustor, dated 12/26/2006, recorded on 01/08/2007 , instrument number 20070034170 , Book --- , Page --- and rerecorded on--- as--- of the Official Records in the office of the Recorder of **Los Angeles**, California under the authority and powers vested in the Trustee designated in the Deed of Trust or as the duly appointed Trustee, default having occurred under the Deed of Trust pursuant to the Notice of Default and Election to Sell under the Deed of Trust. Trustee having complied with all applicable statutory requirements of the State of California and performed all duties required by the Deed of Trust including, among other things, as applicable, the mailing of copies of notices or the publication of a copy of the Notice of Default or the personal delivery of the copy of the Notice of Default or the posting and mailing of copies of the Notice of Sale or the publication of a copy thereof.

TS No.: 2012-18612

# TRUSTEE'S DEED UPON SALE

**Order No.: 1202-CA-311649**

At the place fixed in the Notice of Trustee's Sale, said Trustee did sell said property above described at public auction on **04/02/2019** to said Grantee, being the highest bidder at said sale for the amount bid, being **$465,000.00** in lawful money of the United States, or by the satisfaction, pro tanto, of the obligations then secured by said Deed of Trust, receipt thereof is hereby acknowledged in full/partial satisfaction of the debt secured by said Deed of Trust.

Date: **April 8, 2019**

By:

Western Progressive, LLC

Stephanie Spurlock, **Trustee Sale Assistant**

STATE OF Georgia
COUNTY OF Fulton

On April 8, 2019 before me, Stephanie Spurlock Personally appeared C. Scott who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

C. Scott                                        (Seal)

*C SCOTT*
*NOTARY*
*EXPIRES*
*GEORGIA*
*Sept. 09, 2022*
*PUBLIC*
*GWINNETT COUNTY*

# EXHIBIT C



This page is part of your document - DO NOT DISCARD



## 20170519679



**Pages:**
**0003**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**05/10/17 AT 08:00AM**

| | |
|---|---|
| FEES: | 28.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 28.00 |



**L E A D S H E E T**



201705100110034

00013700700

008320233

**SEQ:**
**05**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

EAT600

R26

RECORDING REQUESTED BY & PREPARED BY:

**The Document Center, Inc.**
3908 Foothill Blvd.Glendale, CA 91214
When Recorded Mail Document
and Tax Statement To:
Doris Mae Tinson &
Julianna D. Gin
5468 10th Ave.
Los Angeles, CA 90043

05/10/2017

*20170519679*

Escrow No.   13895-C
Title Order No.

APN: 5006-014-001

## QUITCLAIM DEED

The undersigned grantor(s) declare(s)
Documentary transfer tax is $        None 0                City tax $        None 0
   [   ] computed on full value of property conveyed, or
   [   ] computed on full value less value of liens or encumbrances remaining at time of sale,
   [   ] Unincorporated area    City of _____ Los Angeles _____

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
Doris Mae Tinson, an unmarried woman

hereby remises, releases and quitclaims to
Doris Mae Tinson, an unmarried woman and Julianna D. Gin, a single woman, mother and
daughter AS JOINT TENANTS

the following described real property in the City of _____ Los Angeles _____
County of _____ Los Angeles _____, State of _____ California _____

Lot 471 of Tract No. 668, in the City of Los Angeles, County of Los Angeles, State of
California, as per Map recorded in Book 15, Pages 194 and 195 of Maps, in the Office of
the County Recorder of said County.

Commonly known as: 5468 10th Ave., Los Angeles, CA 90043

"THIS IS A BONAFIDE GIFT AND THE GRANTOR RECEIVED NOTHING IN RETURN, R&T 11911."

DATED: May 1, 2017

_Doris M. Tinson_
Doris Mae Tinson

# ACKNOWLEDGEMENT

A notary public or other completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF California

COUNTY OF Los Angeles

ON 5-5-17 before me,

Marusich , notary public,

personally appeared Doris Mae Tinson

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature Marusich

L. MARUSICH
Notary Public - California
Los Angeles County
Commission # 2159057
My Comm. Expires Jul 3, 2020

# EXHIBIT D

Zieve, Brodnax & Steele, LLP
30 Corporate Park, Suite 450,
Irvine, CA 92606
Phone: (714) 848-7920 Fax: (714) 848-7650

Dated:   April 16, 2019

**VIA CERTIFIED 1ST CLASS MAIL**

Re:   NOTICE OF SURPLUS PROCEEDS
     Servicer:               Western Progressive, LLC
     Property Address:    5468 10th Avenue
                             Los Angeles, CA 90043
     Trustor:               Doris Mae Tinson
     Trustee Sale Number:  2012-18612

## NOTICE OF PROCEEDS OF SALE

Dear Sir/Madame:

Zieve, Brodnax & Steele, LLP represents Western Progressive, LLC as successor trustee, which conducted a Trustee's Sale hereinafter ("Sale") on 04/02/2019 for the above referenced property. The property was purchased by a third-party at that Sale and the proceeds from the Sale exceeded the amount of the foreclosure and the indebtedness owed to the foreclosing beneficiary.

At the time of the Sale, you were listed as having an interest in the subject property which was extinguished by the foreclosure sale. You may, therefore, have a claim to all or a portion of the Sale proceeds remaining. If you wish to pursue any potential claim, you must send this office a claim, under penalty of perjury, specifying the amount of the claim to the date of the Trustee Sale, including an itemized statement of principal, interest and other charges **as of the date** of the foreclosure. The claim must be received by this office no later than **thirty (30) days** from the date of this Notice. For your convenience, an Affidavit of Claim has been provided.

NOTICE IS HEREBY GIVEN that you may be required to present proof that you hold an interest in the obligation and the security interest therefore.

Please be advised, in the event we do not hear from you within thirty (30) days of the date of this letter, we may disburse the proceeds to claimants in the order of priority of the written claims submitted to our office as trustee, or if priority is disputed, we may deposit the surplus funds with the superior court and request recovery of any reasonable attorney's fees and costs incurred as a result thereof. Please note that all claimants will be paid in order of their priority against the property. Your claim is not necessarily one that will be paid.

Very Truly Yours,

Zieve, Brodnax & Steele, LLP

Justice Walker
jwalker@zbslaw.com

Enclosure: Affidavit of Claim

Trustor:   Doris Mae Tinson
TS#        2012-18612

## AFFIDAVIT OF CLAIM FOR SURPLUS FUNDS
### (Former Owner)

The undersigned, __Doris Mae Tinson_____ being first duly sworn, depose(s) and say(s):

1. The undersigned was/were the owner of the real property located at __5468 10th Avenue Los Angeles CA 90043__ (the "Property").

2. A claim is hereby made for the remaining surplus funds, or for as much of said surplus funds as is available after payment of all prior liens and encumbrances against the Property.

3. I (we) represent(s) that I (we) may be entitled to all or a part of the surplus funds generated from that certain trustee sale that occurred on __04/02/2019__.

4. I (we) represent(s) and warrant(s) to Zieve, Brodnax & Steele, LLP ("ZBS"): (a) I (we) was (were) the owners of the Property described above on the date of the foreclosure sale; (b) I (we) have not assigned, transferred my (our) interest as owner(s) to any third person or executed any power of attorney in favor of any third person giving said third person a right or interest in said Property or surplus funds; (c) I (we) am (are) not aware of any judgment, lien(s) or abstract(s) recorded against the Property within the past ten years, nor am (are) I (we) liable under any Family Support Order under the Family Law Code or under any tax lien, state or federal, recorded against the Property.

5. I (we) acknowledge(s) that the specific purpose of this Statement of Claim is to induce ZBS to release funds to me/us. The surplus funds check is to be made payable in the name below and mailed to the following address:

   Name(s): __Doris Tinson C/O Consumr Defense Law__ Group
   Mailing address: __2973 Harbor Boulevard, Suite 594__
   _____ __Costa Mesa, CA 92626-3912__
   Phone Number: __(949)202-1299__
   E-Mail __cmargo@cdlawgroup.com__

6. I (we) acknowledge(s) that in the event any information I have provided to ZBS is incorrect or untrue, I (we) will become obligated to any judgment creditor or lienholder, and to ZBS, for any funds I (we) receive or obligations that ZBS or a lien claimant incurs collecting these surplus funds from me/us in the future, including any legal fees ZBS incurs in requiring me to repay the surplus funds to a third party, regardless of whether a lawsuit is filed to obtain the funds.

7. **Copy of Driver's License or Passport must be attached for each claimant.**

Trustor:   Doris Mae Tinson
TS#        2012-18612

I (we) am (are) authorized to execute this affidavit and am (are) over the age of eighteen years old. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 7th day of May _____, 20 19 at 5468 10th Ave, Los Angeles

_Doris M. Tinson_____        _Doris M. Tinson_____
PRINT NAME                        SIGNATURE

_____        _____
PRINT NAME                        SIGNATURE

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California        )
County of Los Angeles      ) ss

On May 7th 2019 before me, _James Li_____, a Notary Public, personally appeared _Doris Mae Tinson_____, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument, and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of _California_____ that the foregoing paragraph is true and correct.

WITNESS my hand and Official Seal

_Jam Li_____
Notary Public in and for said State

JAMES LI
NOTARY PUBLIC · CALIFORNIA
LOS ANGELES COUNTY
COMMISSION # 2243879
MY COMM. EXPIRES MAY 25, 2022

JAMES LI
NOTARY PUBLIC · CALIFORNIA
LOS ANGELES COUNTY
COMMISSION # 2243879
MY COMM. EXPIRES MAY 25, 2022

# CONSUMER DEFENSE LAW GROUP, P.C.

## ATTORNEYS AT LAW

SENT VIA U.S. CERTIFED MAIL

Dated: **04/09/2019**

**Western Progressive, LLC as Trustee for beneficiary**
**C/o 1500 Palma Dr Suite 237**
**Ventura, CA 93003**
**Phone:(866)960-8299**
Fax: 866-960-8298

**Re: Doris Tinson | 5468 10TH Ave., Los Angeles CA 90043| T.S. No. 2012-18612**
NOTICE REGARDING DIRECT COMMUNICATION

Dear **Western Progressive, LLC**

This letter shall serve as notice regarding direct communication with our client(s) including all forms of communication including but not limited to in-person, written, telephonic and electronic.

As you know there are ethical prohibitions on contacting represented parties pursuant to **California Rule of Professional Conduct 2-100(A)** "[while representing a client, a member shall not communicate directly or indirectly about the subject of the representation with a party the member knows to be represented by another lawyer in the matter, unless the member has the consent of the other lawyer." The rule is intended to prevent an attorney from taking advantage of a party in the absence of her counsel, and to preserve the integrity of the attorney-client relationship. See Graham v. United States (9th Cir. 1996) 96 F.3d 446, 449; see also CRPC Rule 2-100, Discussion.

As a reminder, the rule still applies even if a represented party wants to communicate with an opposing attorney, the attorney may not do so without opposing counsel's consent.

Failure to comply with the above principles can have serious consequences for attorneys. See, e.g., *Levin v. State Bar* (1989) 47 Cal.3d 1140, 1150 (three year suspension).

Please direct all communication relating to this matter to our office and we will gladly assist you.

Please do not contact the client directly.

Regards,

Tony Cara, Esq.

2973 Harbor Boulevard, Suite 594
Costa Mesa, CA 92626
Email: cdlglawyer@gmail.com
Tel: (888) 615-6765 - Fax: (888) 660-8874

# CONSUMER DEFENSE LAW GROUP, P.C.

## ATTORNEYS AT LAW

Date: **04/09/2019**

Sent via
Fax: 866-960-8298

**Western Progressive, LLC as Trustee for beneficiary**
**C/o 1500 Palma Dr Suite 237**
**Ventura, CA 93003**
Phone:(866)960-8299

| | |
|---|---|
| Attention: | California Surplus Disbursements Dept. |
| Regarding: | **Trustee Sale No.:** 2012-18612 |
| Property: | 5468 10TH Ave., Los Angeles CA 90043 |
| APN: | 5006-014-001 |
| Borrower/Owner: | Doris Tinson |

### NOTICE OF LEGAL REPRESENTATION
### Effective **04/05/2019**

Surplus Administrator

Please be advised that this office represents the above named client(s) in regards to the foreclosure and recovery of any and all Surplus / Excess Funds resulting from the sale. Please do not contact our clients. You are requested to direct any and all communications to this office.

I look forward to discussing this foreclosure sale with you and resolving any and all claims that my clients may have against the foreclosing trustee and beneficiary. Please let me know at your earliest convenience when you are available for a phone call.

Thank you,

Tony Cara,
Attorney At Law

2973 Harbor Boulevard, Suite 594
Costa Mesa, CA 92626-3912
Email: Cmargo@cdlawgroup.com
Tel: (888) 615-6765 - Fax: (949)899-6074



**Consumer Defense Law Group P.C.**

2973 Harbor Blvd. Suite 594 Costa Mesa CA 92626 | T: (855) 622-2435 F: 949-899-6074

cmargo@cdlawgroup.com

## STATEMENT OF AUTHORIZATION TO REPRESENT AS ATTORNEY

*ATTN: WESTERN PROGRESSIVE LLC*

*CLIENT(S): DORIS TINSON*

*TRUSTEE SALE NO.: 2012-18612*

I/We, DORIS TINSON, appoint Tony Cara, Esq. CA State Bar #170270, Consumer Defense Law Group, P.C. as its attorney of record regarding the above trustee sale. as my/our attorney-at-law regarding the above trustee sale. I/we revoke any and all authorizations to represent me/us that have been signed before this date and any representation made by other parties as to their authorization to communicate on my/our behalf are without my/our consent. All correspondence should be directed to: Consumer Defense Law Group PC, Cynthia Margo Post Foreclosure Unit, 2973 Harbor Blvd. Suite 594, Costa Mesa, CA, 92626, Tel: (855) 622-2435 F: (949)899-6074. cmargo@cdlawgroup.com

I expressly grant Consumer Defense Law Group P.C., attorneys and its staff to do all things whatsoever required on my/our behalf regarding the Trustee Sale No. 2012-18612, to recover proceeds of sale, to execute any affidavit or Statement of Claim for Surplus Funds resulting from the trustee sale on my behalf, and all other remedial action hitherto.

### ATTACH NOTARY ACKNOWLEDGMENT BELOW:

Client(s): _Doris M. Tinson_  Date: _April 5, 2019_
DORIS TINSON

**(Please attach notary acknowledgement)**

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of ___Orange___ )

On __April 5 2019__ before me, __EMPOE-ABAD NOTRY PUBLIC__
(insert name and title of the officer)

personally appeared __Tinson Doris Mae__
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature __E M Poe Abad__                    (Seal)

E. M. POE-ABAD
COMM. # 2254380
NOTARY PUBLIC CALIFORNIA
ORANGE COUNTY
My comm. expires Sep. 11, 2022



**Consumer Defense Law Group P.C.**
2973 Harbor Blvd. Suite 594 Costa Mesa CA 92626 | T: (855) 622-2435 F: 949-899-6074
cmargo@cdlawgroup.com

APN: 5006-014-001

### POWER OF ATTORNEY - SPECIAL

**KNOW ALL MEN BY THESE PRESENTS that DORIS TINSON** has (have) made, constituted and appointed, and by these presents does(do) hereby make, constitute and appoint **CONSUMER DEFENSE LAW GROUP P.C. and any of its attorneys of record** as my(our) true and lawful Attorney(ies) for me(us) and in my(our) name, place and stead to ask, demand, sue for, recover, collect and receive all such sums of money, debts, dues, accounts, legacies, bequests, interests, dividends, annuities, and demands whatsoever as are now or shall hereafter become due, owing, payable, or belonging to the undersigned; and have, use, and take all lawful ways and means in the name of the undersigned, or otherwise, for the recovery thereof, by legal process, and to compromise and agree for the same, and grant acquittance or other sufficient discharges for the same, for the undersigned, and in the name of the undersigned to make, seal, and deliver the same; to compromise any and all debts owing by the undersigned, and to convey, transfer, and/or assign any property of any kind or character belonging to the undersigned in satisfaction of any debt owing by us or either of us; to bargain, contract, agree for, purchase, receive, recover surplus proceeds from a trustee sale, and take lands, tenements, hereditaments, and accept the seisin and possession of all lands, and all deeds, and other assurances in the law therefore; and to lease, let, demise, bargain, sell, remise, release, convey, mortgage, convey in trust, and hypothecate lands, tenements, and hereditaments, upon such terms and conditions, and under such covenants as said attorney shall think fit; to exchange real or personal property for other real or personal property, and to execute and deliver the necessary instruments of transfer or conveyance to consummate such exchange; to execute and deliver subordination agreements subordinating any lien, encumbrance or other right in real or personal property to any other lien, encumbrance, or other right therein; also to bargain and agree for, buy, sell, mortgage, hypothecate, convey in trust or otherwise, and in any and every way and manner deal in and with goods, wares and merchandise, choses in action, and other property in possession or in action, including authority to utilize my eligibility for V A Guaranty; also to transfer, assign, and deliver stock and the certificate or certificates evidencing the ownership of the same; and to make, do, and transact all and every kind of business of what nature and kind soever; and, also, for the undersigned and in the name(s) and as the act and deed of the undersigned, to sign, seal, execute, deliver, and acknowledge such deeds, covenants, leases, indentures, agreements, mortgages, deeds of trust, hypothecations, assignments, bottomries, charter parties, bills of lading, bills, bonds, notes, receipts, evidences of debts, releases, and satisfactions of mortgage, judgment and other debts, and such other instruments in writing, of whatever kind of nature, as may be reasonable, advisable, necessary or proper in the premises. Each and all of the powers herein granted shall be exercised by said Attorney as to the one following described property **commonly known as 5468 10TH AVE,, LOS ANGELES, CA, 90043)**

**GIVING AND GRANTING** unto said attorney full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises, as fully to all intents and purposes as the undersigned might or could do if personally present, the undersigned hereby expressly ratifying and confirming all that said Attorney shall lawfully do or cause to be done by virtue of these presents.

Client(s): _Doris M. Tinson_   Date:_____
DORIS TINSON

**(Please attach notary acknowledgement)**

# ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of ~~Orange~~ )

On ~~April 5 2019~~ before me, ~~EMPOE-ABAD NOTRY PUBLIC~~

(insert name and title of the officer)

personally appeared ~~Tinson, Doris MAE~~

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

E. M. POE-ABAD
COMM. # 2254380
NOTARY PUBLIC CALIFORNIA
ORANGE COUNTY
My comm. expires Sep. 11, 2022



# EXHIBIT E



STATE OF CALIFORNIA

# FRANCHISE TAX BOARD
COLLECTION ADVISORY TEAM, M/S A-240
P. O. BOX 2952
SACRAMENTO CA 95812-2952

Date: May 8, 2019

In reply refer to:
624: JR: GIN

**ZIEVE BRODNAX & STEELE LLP**
**30 CORPORATE PARK SUITE 450**
**IRVINE CA 92606-3401**

| | |
|---|---|
| T.S. No. | : 2012-18612 |
| Taxpayer (s) | : JULIANNA GIN |
| FTB Account No's | : 111-25948-70 |
| Property Address | : 5468 10TH AVENUE LOS ANGELES, CA 90043-2526 |

When the Franchise Tax Board receives a request for a claim to excess proceeds and there is an unpaid balance for California Personal Income Tax that is not secured by a recorded lien, this department may issue to the trustee an ORDER TO WITHHOLD PERSONAL INCOME TAX. Pursuant to Revenue and Taxation Code 18670(a), this order attaches to all credits, personal property or other things of value in your control belonging to JULIANNA GIN. When paying the Franchise Tax Board by check, it is essential that the FTB account number appear on the check. Referencing any other number will delay the processing of the check.

If you have any questions regarding this claim, please contact the undersigned.

JOSH RICAFORT, Advisor
Collection Advisory Team
(916) 845-7923



STATE OF CALIFORNIA
Franchise Tax Board, M/S A-240
PO BOX 2952
SACRAMENTO CA 95812-2952
(916)845-7923

## ORDER TO WITHHOLD
## PERSONAL INCOME TAX

**PART 1 — RETAIN FOR YOUR RECORDS**

Date:   MAY 8, 2019

⌐
ZIEVE BRODNAX & STEELE LLP
30 CORPORATE PARK SUITE 450
IRVINE CA  92606-3401

L                                    ⌐

Case No.: 2012-18612
Acct. No.:
SSN:
Tax Year(s): 2016

Taxpayer's Name and Address:

| AMOUNT DUE |
| --- |
| $ 3,750.49 |

JILIANNA GIN
5468 10TH AVENUE
LOS ANGELES, CA 90043-2526

We are issuing THIS ORDER TO WITHHOLD to enforce payment of an amount due for California Personal Income Tax. The taxpayer has not paid the amount due, shown above. (See reverse side for applicable sections of the California Revenue and Taxation Code.)

THIS ORDER ATTACHES TO ALL CREDITS, PERSONAL PROPERTY, OR OTHER THINGS OF VALUE IN YOUR POSSESSION OR UNDER YOUR CONTROL BELONGING TO THE TAXPAYER. THIS INCLUDES, BUT IS NOT LIMITED TO, PAYMENTS DUE THE TAXPAYER AS A RESULT OF THE TRUSTEE SALE 2012-18612, ON APRIL 2, 2019. THIS ORDER PERTAINS TO A LIABILITY NOT CLAIMED HEREIN.

YOU ARE REQUIRED TO WITHHOLD the lesser of (1) the amount due shown above, or (2) the amount in your possession or under your control belonging to the taxpayer at the time you received this Order.

IN COMPLYING WITH THIS ORDER, WE REQUEST THAT YOU:

1. NOTIFY the taxpayer that you are withholding funds pursuant to the order by delivering PART 3 to the taxpayer as soon as possible.

2. RETAIN ANY FUNDS WITHHELD FOR 10 BUSINESS DAYS FROM THE DATE YOU RECEIVED THIS ORDER OR UNTIL THE DISTRIBUTION OF FUNDS HAVE BECOME FINAL, WHICHEVER IS LATER. AT THE END OF THE HOLDING PERIOD, REMIT ANY FUNDS WITHHELD UNLESS YOU HAVE RECEIVED A RELEASE FROM THIS DEPARTMENT.  PLEASE INCLUDE A COPY OF THIS ORDER WITH YOUR REMITTANCE.

3. COMPLETE the questionnaire on PART 2. Please attach your remittance, if any, to that page and mail it to the Franchise Tax Board office shown at the top of this page (envelope enclosed).

4. ADVISE any interested parties to present claims to the Franchise Tax Board.

5. REFER to PART 2 if you possess or control any property other than cash, payments or credits belonging to the taxpayer.

**EXCERPTS FROM CALIFORNIA REVENUE AND TAXATION CODE**

**18670. NOTICE TO WITHHOLD, HOW SERVED**

(a) The Franchise Tax Board may by notice, served personally or by first-class mail, require any employer, person, officer or department of the state, political subdivision or agency of the state, including the Regents of the University of California, a city organized under a freeholders' charter, or a political body not a subdivision or agency of the state, having in their possession, or under their control, any credits or other personal property or other things of value, belonging to a taxpayer or to an employer or person who has failed to withhold and transmit amounts due pursuant to this article, to withhold, from the credits or other personal property or other things of value, the amount of any tax, interest, or penalties due from the taxpayer or the amount of any liability incurred by that employer or person for failure to withhold and transmit amounts due from a taxpayer under this part and to transmit the amount withheld to the Franchise Tax Board at the times that it may designate. However, in the case of a depository institution, as defined in Section 19(b) of the Federal Reserve Act 12 U.S.C. Sec. 461(b)(1)(A), amounts due from a taxpayer under this part shall be transmitted to the Franchise Tax Board not less than 10 business days from receipt of the notice. To be effective, the notice shall state the amount due from the taxpayer and shall be delivered or mailed to the branch or office reported in information returns filed with the Franchise Tax Board, or the branch or office where the credits or other property is held, unless another branch or office is designated by the employer, person, officer or department of the state, political subdivision or agency of the state, including the Regents of the University of California, a city organized under a freeholders' charter, or a political body not a political body not a subdivision or agency of the state.

(b) (1) At least 45 days before sending a notice to withhold to the address indicated on the information return, the Franchise Tax Board shall request a depository institution to do either of the following:

(A) Verify that the address on its information return is its designated address for receiving notices to withhold.

(B) Provide the Franchise Tax Board with a designated address for receiving notices to withhold.

(2) Once the depository institution has specified a designated address pursuant to paragraph (1), the Franchise Tax Board shall send all notices to that address unless the depository institution provides notification of another address. The Franchise Tax Board shall send all notices to withhold to a new designated address 30 days after notification.

(3) Failure to verify or provide a designated address within 30 days of receiving the request shall be deemed verification of the address on the information return as the depository institution's designated address.

(c) Any corporation or person failing to withhold the amounts due from any taxpayer and transmit them to the Franchise Tax Board after service of the notice shall be liable for those amounts. However, in the case of a depository institution, if a notice to withhold is mailed to the branch where the account is located or principal banking office, the depository institution shall be liable for a failure to withhold only to the extent that the accounts can be identified in information normally maintained at that location in the ordinary course of business.

**18672. FAILURE TO WITHHOLD, LIABILITY**

Any employer or person failing to withhold the amount due from any taxpayer and transmit the same to the Franchise Tax Board after service of a notice pursuant to Section 18670 or 18671 is liable for those amounts.

**18674. WITHHOLD AGENT, MUST PAY WITHOUT RESORTING TO ACTION**

(a) Any employer or person required to withhold and transmit any amount pursuant to this article shall comply with the requirement without resort to any legal or equitable action in a court of law or equity. Any employer or person paying to the Franchise Tax Board any amount required by it to be withheld is not liable therefor to the person from whom withheld unless the amount withheld is refunded to the withholding agent. However, if a depository institution, as defined in 12 U.S.C. Section 461 (b)(1)(A) withholds and pays to the Franchise Tax Board pursuant to this article any monies held in a deposit account in which the delinquent taxpayer and another person or persons have an interest, or in an account held in the name of a third party or parties in which the delinquent taxpayer is ultimately determined to have no interest, the depository institution paying those monies to the Franchise Tax Board is not liable therefor to any of the persons who have an interest in the account, unless the amount withheld is refunded to the withholding agent.

(b) In the case of a deposit account or accounts for which this notice to withhold applies, the depository institution shall send a notice by first-class mail to each person named on the account or accounts included in the notice from the Franchise Tax Board, provided a current address for each person is available to the institution. This notice shall inform each person as to the reason for the hold placed on the account or accounts, the amount subject to being withheld and the date by which this amount is to be remitted to the Franchise Tax Board. An institution may assess the account or accounts of each person receiving this notice a reasonable service charge not to exceed three dollars ($3).



STATE OF CALIFORNIA
Franchise Tax Board, M/S A-240
PO BOX 2952
SACRAMENTO CA 95812-2952
(916)845-7923

**ORDER TO WITHHOLD PERSONAL INCOME TAX**

**PART 2 — RETURN WITH PAYMENT**

Date:   MAY 8, 2019

ZIEVE BRODNAX & STEELE LLP
30 CORPORATE PARK SUITE 450
IRVINE CA  92606-3401

Case No.:   2012-18612
Acct. No.:
SSN:
Tax Year(s):   2016

Taxpayer's Name and Address:

JILIANNA GIN
5468 10TH AVENUE
LOS ANGELES, CA 90043-2526

| AMOUNT DUE |
| --- |
| $ 3,750.49 |

**PLEASE COMPLETE THE QUESTIONNAIRE BELOW.**

A.  ☐  Payment of $_____ is attached.

Payment is not attached because (check one):

B.  ☐  Account closed

C.  ☐  Unable to locate account

D.  ☐  No funds/nothing to report

E.  ☐  Other (Please attach explanation.)

NOTICE:

If you possess or control any property other than cash or credits belonging to the taxpayer, (1) do NOT convert such property to cash as a result of this order, but provide us with a description of the property under your control and hold the property until you receive a release from this department. (2) If such property is sold for other reasons, remit the cash proceeds to this department.

Property other than cash may include, but is not limited to, stocks, bonds, stock options, stock rights, contents of safe deposit boxes, etc.

Contact this office at the address shown above if you are not sure how to proceed in special or unusual circumstances.

FTB 2900 (REV 12-1998)



STATE OF CALIFORNIA
Franchise Tax Board, M/S A-240
PO BOX 2952
SACRAMENTO CA 95812-2952
(916)845-7923

**ORDER TO WITHHOLD
PERSONAL INCOME TAX**

PART 3 — FURNISH TO TAXPAYER

Date:   MAY 8, 2019

ZIEVE BRODNAX & STEELE LLP
30 CORPORATE PARK SUITE 450
IRVINE CA  92606-3401

Case No.:  2012-18612
Acct. No.:
SSN:
Tax Year(s):  2016

**AMOUNT DUE**

$ 3,750.49

Taxpayer's Name and Address:

JILIANNA GIN
5468 10TH AVENUE
LOS ANGELES, CA 90043-2526

The Franchise Tax Board has issued an ORDER TO WITHHOLD to the addressee shown above under authorization of Section 18670 of the California Revenue and Taxation Code to enforce payment of an amount due for California Personal Income Tax.

The addressee has been instructed to deduct and withhold the amount due, shown above, from any credits or payments of any nature due, owing, and unpaid to you. Such credits and payments include, but are not limited to, deposits in financial institutions, declared dividends, rents, royalties, deposits in vacation or holiday trust funds, Individual Retirement Accounts, Keogh Accounts and other personal property in the possession of or controlled by the addressee.

The amount withheld by the addressee will be paid to the Franchise Tax Board and applied to your account for the tax years noted above. You should determine the amount withheld by the addressee and, if it is less than the amount due, you should forward payment of the remaining unpaid balance immediately to avoid further collection action. Please make your check or money order payable to the FRANCHISE TAX BOARD, attach it to this notice, and mail it to the Franchise Tax Board office shown at the top of this page.

**SPECIAL INFORMATION CONCERNING TAXPAYER RIGHTS**

If we levy upon your bank account in error, we can reimburse you for bank charges incurred as a result of our error. To receive reimbursement, you must write to us at the above address within 90 days from the date of the levy.

If immediate, full payment of the amount due will create an undue hardship, or if you have already paid the amount due, or if the amount is not due, contact us immediately. Please telephone the number shown at the top of this form for account information. You should have this notice with you when you call.

The Franchise Tax Board has a Taxpayer Advocate who reviews those cases where taxpayers have been unable to resolve their problems with the Franchise Tax Board through normal channels. To contact the Taxpayer Advocate, write to: Taxpayer Advocate Bureau, PO Box 157, Rancho Cordova CA 95741-0157. FAX (916) 845-6614. You may also email the Advocate at http://www.ftb.ca.gov.

FTB 2900 (REV 12-1998)

## EXCERPTS FROM CALIFORNIA REVENUE AND TAXATION CODE

### 18670. NOTICE TO WITHHOLD, HOW SERVED

(a) The Franchise Tax Board may by notice, served personally or by first-class mail, require any employer, person, officer or department of the state, political subdivision or agency of the state, including the Regents of the University of California, a city organized under a freeholders' charter, or a political body not a subdivision or agency of the state, having in their possession, or under their control, any credits or other personal property or other things of value, belonging to a taxpayer or to an employer or person who has failed to withhold and transmit amounts due pursuant to this article, to withhold, from the credits or other personal property or other things of value, the amount of any tax, interest, or penalties due from the taxpayer or the amount of any liability incurred by that employer or person for failure to withhold and transmit amounts due from a taxpayer under this part and to transmit the amount withheld to the Franchise Tax Board at the times that it may designate. However, in the case of a depository institution, as defined in Section 19(b) of the Federal Reserve Act (12 U.S.C.A. Sec. 461(b)(1) (A)), amounts due from a taxpayer under this part shall be transmitted to the Franchise Tax Board not less than 10 business days from receipt of the notice. To be effective, the notice shall state the amount due from the taxpayer and shall be delivered or mailed to the branch or office reported in information returns filed with the Franchise Tax Board, or the branch or office where the credits or other property is held, unless another branch or office is designated by the employer, person, officer or department of the state, political subdivision or agency of the state, including the Regents of the University of California, a city organized under a freeholders' charter or a political body not a subdivision or agency of the state.

(b) (1) At least 45 days before sending a notice to withhold to the address indicated on the information return, the Franchise Tax Board shall request a depository institution to do either of the following:

(A) Verify that the address on its information return is its designated address for receiving notices to withhold.

(B) Provide the Franchise Tax Board with a designated address for receiving notices to withhold.

(2) Once the depository institution has specified a designated address pursuant to paragraph (1), the Franchise Tax Board shall send all notices to that address unless the depository institution provides notification of another address. The Franchise Tax Board shall send all notices to withhold to a new designated address 30 days after notification.

(3) Failure to verify or provide a designated address within 30 days of receiving the request shall be deemed verification of the address on the information return as the depository institution's designated address.

(c) Any corporation or person failing to withhold the amounts due from any taxpayer and transmit them to the Franchise Tax Board after service of the notice shall be liable for those amounts. However, in the case of a depository institution, if a notice to withhold is mailed to the branch where the account is located or principal banking office, the depository institution shall be liable for a failure to withhold only to the extent that the accounts can be identified in information normally maintained at that location in the ordinary course of business.

### 18672. FAILURE TO WITHHOLD, LIABILITY

Any employer or person failing to withhold the amount due from any taxpayer and to transmit the same to the Franchise Tax Board after service of a notice pursuant to Section 18670 is liable for such amounts.

### 18674. WITHHOLD AGENT, MUST PAY WITHOUT RESORTING TO ACTION

(a) Any employer or person required to withhold and transmit any amount pursuant to this article shall comply with the requirement without resort to any legal or equitable action in a court of law or equity. Any employer or person paying to the Franchise Tax Board any amount required by it to be withheld is not liable therefor to the person from whom withheld unless the amount withheld is refunded to the withholding agent. However, if a depository institution, as defined in 12 U.S.C. Sec. 461(b)(1)(A) withholds and pays to the Franchise Tax Board pursuant to this article any moneys held in a deposit account in which the delinquent taxpayer and another person or persons have an interest, or in an account held in the name of a third party or parties in which the delinquent taxpayer is ultimately determined to have no interest, the depository institution paying those moneys to the Franchise Tax Board is not liable therefor to any of the persons who have an interest in the account, unless the amount withheld is refunded to the withholding agent.

(b) In the case of a deposit account or accounts for which this notice to withhold applies, the depository institution shall send a notice by first-class mail to each person named in the notice or accounts included in the notice from the Franchise Tax Board, provided that a current address for each person is available to the institution. This notice shall inform each person as to the reason for the hold placed on the account or accounts, the amount subject to being withheld, and the date by which this amount is to be remitted to the Franchise Tax Board. An institution may assess the account or accounts of each person receiving this notice a reasonable service charge not to exceed three dollars ($3).

# EXHIBIT F

# Law Offices of Bennett A. Rheingold

3424 Carson Street, Suite 500
Torrance, California 90503
(310) 214-1477 OFFICE (310) 214-0764 FAX

June 4, 2019

**VIA EMAIL AND REGULAR MAIL**

Justice Walker
Zieve, Brodnax & Steele, LLP
30 Corporate Park, Suite 450
Irvine, CA 92606

     Re:   DORIS MAE TINSON          TS #: 2012-18612

     Property Address: 5468 10TH AVE., LOS ANGELES, CA 90043

Dear Justice Walker,

Enclosed please find fully executed original signed by our client in connection with the above-referenced matter:

    **AFFIDAVIT OF CLAIM FOR SURPLUS FUNDS**
  -  **COPY OF DRIVERS LICENSE**

Please feel free to contact us directly with any questions or comments.

Thank you and have a great day!

                     Sincerely,

                 Law Offices of Bennett A. Rheingold
                 3424 Carson Street, Suite 500
                 Torrance, California 90503

Trustor:   Doris Mae Tinson
TS#        2012-18612

# AFFIDAVIT OF CLAIM FOR SURPLUS FUNDS
## (Former Owner)

The undersigned, _____ Julianna D. Gin _____ being first duly sworn, depose(s) and say(s):

1. The undersigned was/were the owner of the real property located at
   __5468 10th Ave, Los Angeles, CA 90043__ (the "Property").

2. A claim is hereby made for the remaining surplus funds, or for as much of said surplus funds as is available after payment of all prior liens and encumbrances against the Property.

3. I (we) represent(s) that I (we) may be entitled to all or a part of the surplus funds generated from that certain trustee sale that occurred on April 2, 2019 .

4. I (we) represent(s) and warrant(s) to Zieve, Brodnax & Steele, LLP ("ZBS"): (a) I (we) was (were) the owners of the Property described above on the date of the foreclosure sale; (b) I (we) have not assigned, transferred my (our) interest as owner(s) to any third person or executed any power of attorney in favor of any third person giving said third person a right or interest in said Property or surplus funds; (c) I (we) am (are) not aware of any judgment, lien(s) or abstract(s) recorded against the Property within the past ten years, nor am (are) I (we) liable under any Family Support Order under the Family Law Code or under any tax lien, state or federal, recorded against the Property.

5. I (we) acknowledge(s) that the specific purpose of this Statement of Claim is to induce ZBS to release funds to me/us.  The surplus funds check is to be made payable in the name below and mailed to the following address:
   Julianna D. Gin
   Name(s): C/O Law Offices of Bennett A. Rheingold
   Mailing address: 3424 Carson St.
   Torrance, CA 90503
   Phone Number: (310)214-1477
   E-Mail bennettrheingoldclients@gmail.com

6. I (we) acknowledge(s) that in the event any information I have provided to ZBS is incorrect or untrue, I (we) will become obligated to any judgment creditor or lienholder, and to ZBS, for any funds I (we) receive or obligations that ZBS or a lien claimant incurs collecting these surplus funds from me/us in the future, including any legal fees ZBS incurs in requiring me to repay the surplus funds to a third party, regardless of whether a lawsuit is filed to obtain the funds.

7. **Copy of Driver's License or Passport must be attached for each claimant.**

Trustor:   Doris Mae Tinson
TS#        2012-18612

I (we) am (are) authorized to execute this affidavit and am (are) over the age of eighteen years old. I declare under penalty of perjury that the foregoing is true and correct.

Executed this **4** day of **June**, 20 **19** at **Torrance, CA**.

**JULIANNA  D. GIN**                     **Julianna D. Gin**
PRINT NAME                                SIGNATURE


_____                  _____
PRINT NAME                                SIGNATURE


> A notary public or other officer completing this certificate
> verifies only the identity of the individual who signed the
> document to which this certificate is attached, and not the
> truthfulness, accuracy, or validity of that document.


State of **California** )
County of **Los Angeles** ) ss

On **June 4, 2019** before me, **Gina Rodriguez**, a Notary Public, personally appeared **Julianna D. Gin**, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **California** that the foregoing paragraph is true and correct.

WITNESS my hand and Official Seal

_____
Notary Public in and for said State

> GINA RODRIGUEZ
> Notary Public – California
> Los Angeles County
> Commission # 2192144
> My Comm. Expires Apr 16, 2021



# EXHIBIT G

Subject: Re: TS#2012-18612/ Property: 5468 10th Avenue, Los Angeles, CA 90043

Date:   6/21/2019 1:26 PM

From:   "Cynthia Margo" <cmargo@cdlawgroup.com>

To:   "Al Gali" <agali@zbslaw.com>, "cdlglawyer@gmail.com" <cdlglawyer@gmail.com>

Cc:   "Martin Romo" <mromo@zbslaw.com>, "Surplus" <surplus@cdlawgroup.com>

the transfer is invalid because the Juliana Gin had mislead Ms tinson into signing by telling hr it was for a Medical directive, but also it is voided because the client was in active bk at the time the document was recorded and she was not granted permission by the courts to change title.

----

Best Regards,
**Cynthia Margo**
Claims Processor,
Office Manager to
**Tony Cara**
Attorney At Law
**CEO, CDLG PC**
Office: (888) 615-6765
Fax:(949)899-6074
Email: cmargo@cdlawgroup.com
Email: cdlglawyer@gmail.com
2973 Harbor Boulevard, Suite 594
Costa Mesa, CA 92626-3912

This email is intended exclusively for the use of the individual or entity to which it is addressed and contains information that is privileged, confidential, and is exempt from use or disclosure under applicable law. If the reader of this email is not the intended individual or entity, you are hereby notified that any dissemination, distribution, or copying of this email is prohibited. If you receive this email in error, please contact us by return email. Thank you for your cooperation.
DISCLAIMER / REPRESENTATION NOTICE: Unless you have previously retained the services of CDLG PC, no Attorney Client relationship exists between you and CDLG PC by the mere receipt of this transmission, including any attachments. Furthermore, any communication with CDLG PC through this transmission may not be considered confidential. Finally, any statement contained herein does not constitute a guarantee regarding the outcome of your legal matter and the information contained in this email DOES NOT constitute legal advice.
Please consider the environment before printing this email.

**From:** Al Gali <agali@zbslaw.com>
**Sent:** Monday, June 10, 2019 1:26 PM
**To:** Cynthia Margo; cdlglawyer@gmail.com
**Cc:** Martin Romo
**Subject:** FW: TS#2012-18612/ Property: 5468 10th Avenue, Los Angeles, CA 90043

# EXHIBIT H

**Al Gali**

**Subject:**                                    FW: TS#2012-18612/ Property: 5468 10th Avenue, Los Angeles, CA 90043

**From:** Al Gali
**Sent:** Friday, August 2, 2019 11:55 AM
**To:** Jessica Belmont <jbelmont@cdlawgroup.com>
**Subject:** FW: TS#2012-18612/ Property: 5468 10th Avenue, Los Angeles, CA 90043

Hi Jessica

Per conversation Julianna  representation is as followed.

Law Office of Bennett A. Rheingold
Contact: Art Olivas; Art Olivas <rheingoldclients@gmail.com>
Direct line 310-626-0190

**Al Gali**
Certified Paralegal
ZBS Law, LLP
30 Corporate Park, Suite 450
Irvine, CA 92606
**P:**  714-848-7920 x 376 | **EFax:**  714-362-9525
Mail to: agali@zbslaw.com
*Not licensed to practice law*

     **Representation in: CA | AZ |  NV |  WA | OR**
   Please consider the environment before printing this email. Reduce. Re-Use. Recycle.
Rate our Service -- Click here to provide your feedback

Notice of Confidentiality & Electronic Privacy Notice:
This e-mail message and its attachments, if any, is inclusive and protected by electronic communications privacy laws and is proprietary in nature to ZBS Law, LLP and is intended solely for the use of the addressee hereof.  Please be advised that this message, and the attachments, if any, may contain information that is confidential, privileged and exempt from disclosure under applicable law.  If the reader of this message is not a specified and intended recipient, you are hereby notified and strictly prohibited from reading, retaining, disclosing, reproducing, distributing, disseminating or otherwise using this transmission.  The accidental delivery of this message to any person other than the intended recipient does not waive any rights, privilege or protection.  If you have received this message in error, please promptly notify the "Company" by reply e-mail or telephone and immediately delete this message from your system. You are further advised that this e-mail and any response thereto is the property of the Company and can be accessed and reviewed by the Company at any time

1

# EXHIBIT I

**Al Gali**

**Subject:**                    FW: TS#2012-18612/ Property: 5468 10th Avenue, Los Angeles, CA 90043

---

**From:** Jessica Belmont <jbelmont@cdlawgroup.com>
**Sent:** Monday, September 30, 2019 12:18 PM
**To:** Al Gali <agali@zbslaw.com>
**Cc:** Tony Cara Attorney <cdlglawyer@gmail.com>; Daniel Rodriguez <drodriguez@cdlawgroup.com>; Surplus <Surplus@cdlawgroup.com>
**Subject:** Re: TS#2012-18612/ Property: 5468 10th Avenue, Los Angeles, CA 90043

Hello,
Will try and reach out to the attorney today one last time.


Thank you for reminder.

---

**From:** Al Gali <agali@zbslaw.com>
**Sent:** Monday, September 30, 2019 12:07 PM
**To:** Jessica Belmont <jbelmont@cdlawgroup.com>
**Cc:** Tony Cara Attorney <cdlglawyer@gmail.com>; Daniel Rodriguez <drodriguez@cdlawgroup.com>; Surplus <Surplus@cdlawgroup.com>
**Subject:** FW: TS#2012-18612/ Property: 5468 10th Avenue, Los Angeles, CA 90043

Hello Jessica

Can you confirm if you've been able to work anything out with the atty office for Julian Jinn?

We are now ready to move forward with processing this file as a Dec. and Deposit based on the attached email received form your office indicating that your client Doris Mae Tinson is disputing the claim to Julia Jinn submitted.

Thanks,

**Al Gali**
Certified Paralegal
ZBS Law, LLP
30 Corporate Park, Suite 450
Irvine, CA 92606
**P:** 714-848-7920 x 376 | **EFax:** 714-362-9525
Mail to: agali@zbslaw.com
***Not licensed to practice law***

    **Representation in: CA | AZ | NV | WA | OR**
    🌎 Please consider the environment before printing this email. Reduce. Re-Use. Recycle.
Rate our Service -- Click here to provide your feedback

Notice of Confidentiality & Electronic Privacy Notice:
This e-mail message and its attachments, if any, is inclusive and protected by electronic communications privacy laws and is proprietary in nature to ZBS Law, LLP and is intended solely for the use of the addressee hereof. Please be advised that this message, and the attachments, if any, may contain information that is confidential, privileged and exempt from disclosure under applicable law. If the reader of this message is not a specified and intended recipient, you are hereby notified and

# EXHIBIT J

| | |
|---|---|
| **From:** | Al Gali |
| **To:** | Tony Cara; Surplus |
| **Subject:** | TS#2012-18612/ Property: 5468 10th Avenue, Los Angeles, CA 90043 |
| **Date:** | Friday, November 1, 2019 1:27:00 PM |
| **Attachments:** | 2012-18612 Emal from atty inidicating FO dispute to Julia Jinn"s claim.pdf |
| | QCD from Tinson to Tinson and Jin as joint tenants.pdf |

Hello Mr. Cara,

I spoke to Ana on this file today. I am just letting you know that we are moving forward with
interpleading this file with the court and that we are now preparing a petition for Dec and Deposit to
be filed.

Attached is an email received back on 6/12/2019. This email will be our basis for the interpleader
since your client Doris Tinson disputes the also attached QCD giving Juliann Gin interest to the
property due to being misled into signing the QCD in question.

On 7/22/2019 I emailed your office advising that Juliann Gin the other now former owner is not
withdrawing her claim.

On 8/01/2019 Jessica Belmont advised per phone conversation that she would be contacting the
other atty office that represents Julianna Gin to see about working something out.  On 9/30/2019 I
sent an email to Jessica Belmont with your office to advise if she has been able to work anything out
with the opposing atty for Juliann Ginn. As of today I have not received any responses.

Please note that we are moving forward with interpleading this file.

Thanks,


**Al Gali**
Certified Paralegal
ZBS Law, LLP
30 Corporate Park, Suite 450
Irvine, CA 92606
**P:**  714-848-7920 x 376 | **EFax:**  714-362-9525
Mail to: agali@zbslaw.com
***Not licensed to practice law***

**Representation in: CA | AZ |  NV |  WA |  OR**

☘ Please consider the environment before printing this email. Reduce. Re-Use. Recycle.

Rate our Service ☰Click here to provide your feedback

Notice of Confidentiality & Electronic Privacy Notice:
This e-mail message and its attachments, if any, is inclusive and protected by electronic communications privacy laws and is proprietary
in nature to ZBS Law, LLP and is intended solely for the use of the addressee hereof.  Please be advised that this message, and the
attachments, if any, may contain information that is confidential, privileged and exempt from disclosure under applicable law.  If the
reader of this message is not a specified and intended recipient, you are hereby notified and strictly prohibited from reading, retaining,
disclosing, reproducing, distributing, disseminating or otherwise using this transmission.  The accidental delivery of this message to any
person other than the intended recipient does not waive any rights, privilege or protection.  If you have received this message in error,

# ATTACHMENT 13:

# NOTICE OF INTENT TO DEPOSIT

1   ZBS LAW, LLP
    Jonathan J. Damen, SBN 251869
2   Talia M. Cortese, SBN 318124
    30 Corporate Park, Suite 450
3   Irvine, CA 92606
    Telephone: (714) 848-7920
4   Fax: (714) 908-2615

5
    Attorneys for Petitioner
6   WESTERN PROGRESSIVE, LLC

7              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                      FOR THE COUNTY OF LOS ANGELES

9

10                                      )   CASE NO.:
11                                      )   Unlimited Jurisdiction
                                        )   Date Action Filed:
12                                      )
                                        )
13                                      )   **PETITIONER WESTERN PROGRESSIVE,**
                                        )   **LLC NOTICE OF INTENT TO DEPOSIT**
14                                      )   **UNDISTRIBUTED SURPLUS PROCEEDS**
                                        )   **OF TRUSTEE'S SALE WITH THE COURT**
15                                      )
                                        )
16                                      )
                                        )   Trial Date:          None set.
17                                      )
                                        )
18                                      )
                                        )
19                                      )

20

21   **TO ALL PARTIES AND TO THEIR RESPECTIVE COUNSEL OF RECORD:**

         **PLEASE TAKE NOTICE** that Petitioner, Western Progressive, LLC, ("Petitioner" or
22
     "Trustee") under the Deed of Trust, which encumbered the real property commonly known as
23
     5468 10th Avenue, Los Angeles, CA 90043 ("Subject Property"), intends to deposit the surplus
24
     proceeds from the Trustee's Sale conducted on April 2, 2019 with the Clerk of this Court.
25
         **PLEASE TAKE FURTHER NOTICE** that pursuant to California Civil Code section
26
     2924j(d), a claim for funds must be filed with the Court within thirty (30) days from the date of
27
     service of this notice, or when the Court sends notice that all Claims are to be filed with the Court
28

                                            1

1   for consideration. The address of the Superior Court of California, County of Los Angeles, Stanley

2   Mosk Courthouse 111 North Hill Street, Los Angeles, CA 90043. The telephone number of the

3   Court to obtain further information is (213) 830-0800

4        **Upon successful filing of the Petition with the Court, our office will send out additional**

5   **notifications to all potential claimants acknowledging the date of first legal filing, the case**

6   **number and any upcoming hearing dates with the Court.**

7

8   DATED:    11/14/2019                         ZBS LAW, LLP

9

10                                          By:

11                                              JONATHAN J. DAMEN
                                                Attorneys for Petitioner
12                                              Western Progressive

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

# PROOF OF SERVICE

I am over the age of eighteen years and not a party to the within action. I am employed by ZBS LAW, LLP, whose business address is: 30 Corporate Park, Suite 450, Irvine, CA 92606.

On November 14, 2019, I served the within document(s) on the interested parties in this action described as:

1. **PETITIONER WESTERN PROGRESSIVE, LLC NOTICE OF INTENT TO DEPOSIT UNDISTRIBUTED SURPLUS PROCEEDS OF TRUSTEE'S SALE WITH THE COURT**

☐     by transmitting via electronic mail the document(s) listed above to the email addresses provided by counsel.

☒     by placing ☐ the original ☒ true copy(ies) thereof enclosed in sealed envelope(s) ☐ addressed as follows: ☒ addressed as stated on the attached mailing list.

| Name & Address | Telephone / Fax / E-mail | Role |
|---|---|---|
| Doris Mae Tinson<br>5468 10th Avenue, Los Angeles, CA 90043 | (949) 202-1299<br>cmargo@cdlawgroup.com | *Former Owner* |
| Doris Mae Tinson C/O Consumer Defense Law Group 2973 Harbor Boulevard, Suite 594 Costa Mesa, CA 92626 | (949) 202-1299<br>cmargo@cdlawgroup.com | *Former Owner* |
| Julianna D. Gin<br>5468 10th Avenue, Los Angeles, CA 90043 | | *Former Owner* |
| Julianna D. Gin<br>C/O Law Offices of Bennett A. Rheingold<br>3424 Carson Street, Suite 500 Torrance, CA 90503 | (310) 214-1477<br>bennettrheingoldclients@gmail.com | *Former Owner* |
| State of California Franchise Tax Board<br>P.O. BOX 2952 Sacramento, CA 95812 | ((916) 845-7923 | *Claimant* |

| | | |
|---|---|---|
| Sinle Insurance Company Inc.<br>5468 10th Avenue<br>Los Angeles, CA 90043 | | *Claimant* |
| Internal Revenue Services<br>24000Avila Rd. MS 5905<br>Laguna Niguel, CA 90220 | | *Claimant* |
| Teri King Bail Bond Agency, A Celes King III and Associates CO.<br>1530 W. Martin Luther King Blvd.<br>Los Angeles, CA 90062 | | *Claimant* |

☒ **BY MAIL** (Code Civ. Proc. § 1013(a))—I deposited such envelope(s) for processing in the mailroom in our offices. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day by first-class mail with postage thereon fully prepaid at Irvine, California, in the ordinary course of business (Civil Code § 2924j(d)). I am aware that on motion of a party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

☐ **BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED**—I served the within document(s) by placing ☐ the original ☐ true copy(ies) thereof enclosed in sealed envelope(s) with Certified Mail, Return Receipt Requested, postage thereon fully prepaid and by causing such envelope(s) to be deposited in the mail at 30 Corporate Park, Suite 450, Irvine, CA 92606.
I am "readily familiar" with the firm's practice of collecting and processing correspondence for mailing by Certified Mail, Return Receipt Requested, with the United States Postal Service: it is deposited with the United States Postal Service on that same day in the ordinary course of business. I am aware that on motion of a party served, service is presumed invalid if the postal cancellation date or postal meter date on the envelope(s) is more than one day after the date of deposit for mailing contained in this affidavit

☐ **BY PERSONAL SERVICE** (Code Civ. Proc. § 1011(a))—I delivered such envelope(s) by hand to the offices of the addressee(s).
☒ (State) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on November 14, 2019, at Irvine, California.

AL GALI

Proof of Service

# ATTACHMENT 15:

# TRUSTEE'S FEES AND EXPENSES



**ZBS LAW, LLP**
30 Corporate Park #450
Irvine, CA 92606

Ph:714-848-7920      Fax:714-848-7650

| Invoice Date |
|---|
| 11/15/2019 |

| Invoice Number |
|---|
| 2042863 |

Western Progressive, LLC
P.O. Box 105460
Atlanta, GA 30348

RE: Western Progressive, LLC 70936174
Vs: Doris Tinson, Warren Johnson, Sinle Insurance Company, Inc, Brenda Johnson, Dept.Of Water & Power, Dept Of Water & Power Of The City Of LA, District Attorney`s Office Bureau of Family Support Operations, Department of Building and Safety Code Enforcement Bureau, STATE OF CALIFORNIA FRANCHISE TAX BOARD, Internal Revenue Service, Julianna Gin, Teri King Bail Bond Agency, A Celes King III and Associates CO.
OURFILE: 19001573

Property Address
5468 10th Avenue
Los Angeles, CA 90043

BILLING SUMMARY:

| COSTS | | |
|---|---|---|
| DATE | COST DESCRIPTION | AMOUNT |
| 04/11/2019 | Title Date Down | $0.00 |
| 04/16/2019 | Mailing Service - Cost (R) | $0.00 |
| 04/16/2019 | Mailing Service - Cost | $6.10 |
| 04/16/2019 | Mailing Service - Cost | $6.10 |
| 04/16/2019 | Mailing Service - Cost | $6.10 |
| 04/16/2019 | Mailing Service - Cost | $6.10 |
| 04/16/2019 | Mailing Service - Cost | $6.10 |
| 04/16/2019 | Mailing Service - Cost | $6.10 |
| 04/16/2019 | Mailing Service - Cost | $6.10 |
| 04/16/2019 | Mailing Service - Cost | $6.10 |
| 04/16/2019 | Mailing Service - Cost | $6.10 |
| 04/16/2019 | Mailing Service - Cost | $6.10 |
| 04/16/2019 | Mailing Service - Cost | $6.10 |
| 04/16/2019 | Mailing Service - Fee (R) | $0.00 |
| 04/16/2019 | Mailing Service - Fee | $2.30 |
| 04/16/2019 | Mailing Service - Fee | $2.30 |
| 04/16/2019 | Mailing Service - Fee | $2.30 |
| 04/16/2019 | Mailing Service - Fee | $2.30 |
| 04/16/2019 | Mailing Service - Fee | $2.30 |
| 04/16/2019 | Mailing Service - Fee | $2.30 |
| 04/16/2019 | Mailing Service - Fee | $2.30 |
| 04/16/2019 | Mailing Service - Fee | $2.30 |
| 04/16/2019 | Mailing Service - Fee | $2.30 |
| 04/16/2019 | Mailing Service - Fee | $2.30 |
| 04/16/2019 | Mailing Service - Fee | $2.30 |
| 04/16/2019 | Mailing Service - Fee | $2.30 |
| 11/14/2019 | Court Fees - Filing Feed  (R) | $435.00 |

| HOURLY FEES | | | | |
|---|---|---|---|---|
| DATE | FEE DESCRIPTION | RATE | HOURS | AMOUNT |

| Date | Description | Rate | Hours | Amount |
|------|-------------|------|-------|--------|
| 04/11/2019 | OPENED FILE/ REQUESTED DOCS FROM TITLE/ UPLOADED FCL DOCS/ ADDED PARTIES TO MAILING LIST/ CREATED CASE SUMMARY | $150.00 | 0.70 | $105.00 |
| D | | | | |
| 04/15/2019 | Reviewed surplus funds referral and title documents prior to sending out initial surplus funds letters to potential claimants. revised mailing list to include additional potential claimant. Initial surplus letter approved for mailing. | $385.00 | 1.00 | $385.00 |
| 05/14/2019 | Uploaded FO claim form | $150.00 | 0.10 | $15.00 |
| 05/20/2019 | Uploaded second FO rep docs/ sent attny claim form | $150.00 | 0.10 | $15.00 |
| 06/10/2019 | examined FO claim and drafted two emails | $150.00 | 0.40 | $60.00 |
| 06/18/2019 | Analyzed file, and drafted two emails. | $150.00 | 0.40 | $60.00 |
| 06/21/2019 | Reviewed email received from FO atty and drafted a response | $150.00 | 0.20 | $30.00 |
| 06/24/2019 | Reviewed copies of judgments listed on our TSG and determined they are either expired as being older than 10 years old and do not apply to our former property owner. | $385.00 | 0.50 | $192.50 |
| 08/01/2019 | Drafted an email, created a fax package, and made a call to junior claimant. | $150.00 | 0.30 | $45.00 |
| 09/17/2019 | Analyzed and reviewed file for client update | $150.00 | 0.20 | $30.00 |
| 10/10/2019 | Made a call, analyzed file for plan of disbursement and drafted an email to one of the former owner`s atty | $150.00 | 0.30 | $45.00 |
| 10/11/2019 | Reviewed file, prepared update to Client re need for Petition for Declaration and Deposit of Surplus Funds, as dispute between former titleholders regarding who is entitled to the surplus funds. | $385.00 | 0.50 | $192.50 |
| 11/01/2019 | Drafted email to FO atty | $150.00 | 0.10 | $15.00 |
| 11/12/2019 | Created Dec and Deposit file, uploaded to U drive and sent to JD for review | $150.00 | 2.50 | $375.00 |
| 11/13/2019 | Review and execute Notice of Intent to Deposit Funds with the Court letter. | $385.00 | 0.40 | $154.00 |
| 11/14/2019 | Anticipated billing for partner review and approval to for Declaration and Deposit of surplus funds with the Court and issue check on deposit | $750.00 | 0.50 | $375.00 |

| 11/14/2019 | Anticipated billing to monitor court docket for court processing of filed Dec & Deposit; receipt of conformed copy; serve on all claimants; file POS with court. | $150.00 | 1.50 | $225.00 |
|---|---|---|---|---|
| 11/14/2019 | Billing anticipated for preparing for and attending Court hearing on motion for discharge of trustee/deposit of surplus funds with the Court. | $385.00 | 1.50 | $577.50 |
| 11/14/2019 | Billing anticipated for review and execution of notice of entry of order. | $385.00 | 0.50 | $192.50 |
| 11/14/2019 | Billing anticipated for review of court order to deposit funds, prepare check request for issuance of surplus check in response to court order; draft cover letter to court clerk; mail surplus letter to court; prepare final closing of file. | $385.00 | 1.00 | $385.00 |
| 11/14/2019 | Review, revise and finalize Dec & Deposit re Petition for filing surplus funds with the Court. | $385.00 | 2.50 | $962.50 |
| **TOTAL HOURLY FEES AND TIME** | | | **15.20** | **$4,436.50** |

| TOTALS | |
|---|---|
| **DESCRIPTION** | **AMOUNT** |
| Total Costs Since Last Billing | $535.80 |
| Total Hourly Fees Since Last Billing | $4,436.50 |
| **Total Amount Due** | **$4,972.30** |

| INVOICE LEGEND | |
|---|---|
| R | Recoverable from Borrower |
| NR | Non-Recoverable from Borrower |
| RE | Reimbursable from GSE |
| NE | Non-Reimbursable from GSE |

Thank you for the opportunity to be of service.

TAX ID: 47-5636038

Electronically Received 11/22/2019 03:16 PM

1
2
3
4
5
6

ZBS LAW, LLP
Jonathan J. Damen, SBN 251869
Talia M. Cortese, SBN 318124
30 Corporate Park, Suite 450
Irvine, CA 92606
Telephone: (714) 848-7920
Fax: (714) 908-2615

Attorneys for Petitioner
WESTERN PROGRESSIVE, LLC

7
8
9

**IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES, STANLEY MOSK COURTHOUSE**

10
11
12
13
14
15
16
17
18
19

IN RE:

5468 10TH AVENUE,
LOS ANGELES, CA 90043

CASE NO.: 19STCP04975
Unlimited Jurisdiction
Date Action Filed: 11/20/2019

Assigned for All Purposes to: Michelle
Williams Hon. Judge

**[PROPOSED] ORDER TO DEPOSIT
UNDISTRIBUTED SURPLUS PROCEEDS
OF TRUSTEE'S SALE WITH THE
COURT; ORDER FOR DISCHARGE AND
DISMISSAL OF PETITIONER WESTERN
PROGRESSIVE, LLC**

Trial Date:          None set.

20
21
22
23
24
25
26
27
28

**PLEASE TAKE NOTICE THAT:**

The Court, having considered the Petition and Declaration Regarding Unresolved Claims and Deposit of Undistributed Surplus Proceeds of Trustee's Sale of Petitioner Western Progressive, LLC ("Petitioner"), acting in its capacity as trustee under a deed of trust, enters the following order:

///

1

1

2     **IT IS HEREBY ORDERED:**

3     1.    There is a conflict between potential claimants to the surplus proceeds obtained from

4           the sale of the real property located at 5468 10th Avenue, Los Angeles, CA 90043, and

5           that after exercising due diligence, the Trustee is unable to determine the proper

6           distribution of the trustee's sale surplus proceeds.

7     2.    That Trustee will deposit the undistributed surplus proceeds in the amount of $_____

8           with the clerk of this Court.

9     3.    Upon entry of this order and deposit of funds with the Clerk, Petitioner is discharged

10          from any and all liability of all potential claims of each and any claimant.

11    4.    Further, Petitioner is dismissed from this action with prejudice, and freed from the

12          obligation of participating in the litigation between the potential claimants, including

13          future hearings set by this Court.

14    5.    A hearing re: Unresolved Claims is scheduled for _____.

15          All Claims must be filed 15-days prior to the above hearing date pursuant to CCCS

16          2924j(d).

17    6.    Should no claims be filed within a designated time prescribed by this Court, the Funds

18          shall escheat to the Court pursuant to Government Code Section 68084.1

19

20    DATED: _____

21                                               _____
                                                 HONORABLE JUDGE OF THE SUPERIOR
22                                               COURT, FOR THE COUNTY OF LOS
                                                 ANGELES
23

24

25

26

27

28

2

Order of Deposit

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>**11/20/2019**<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _____ Ricardo Perez _____ Deputy |
| NOTICE OF CASE ASSIGNMENT<br>UNLIMITED CIVIL CASE | |
| **Your case is assigned for all purposes to the judicial officer indicated below.** | CASE NUMBER:<br>19STCP04975 |

### THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

| | ASSIGNED JUDGE | DEPT | ROOM | | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|---|
| ✓ | Michelle Williams  Court | 74 | | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record

on _11/21/2019_____
     (Date)

LACIV 190 (Rev 6/18)<br>LASC Approved 05/06

Sherri R. Carter, Executive Officer / Clerk of Court

By _Ricardo Perez_____, Deputy Clerk

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007.  They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed.  Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint.  Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date.  All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference.  These matters may be heard and resolved at this conference.  At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules.  Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction.  Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status.  If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**